UNITED SATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CV-00138-JPG-PMF |
| | ) | |
| PHARMACIA LLC, (formerly known as | ) | |
| MONSANTO COMPANY) and SOLUTIA | ) | |
| INC., | ) | |
| | ) | |
| Defendants/Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Actuant Corporation; Alco Industries, | ) | |
| Inc.; Allied Healthcare Products, Inc., | ) | |
| f/k/a Chemetron – Medical Products, | ) | |
| Inc.; American Nickeloid Company; | ) | |
| American Recreation Products, LLC; | ) | |
| Arris International, Inc.; Asbury | ) | |
| Automotive St. Louis, L.L.C. d/b/a Plaza | ) | |
| Motor Co.; Associated Electric | ) | |
| Cooperative, Inc.; Bachman Machine | ) | |
| Company; Baker Hughes Incorporated; | ) | |
| Baldor Electric Company, BBB Inc.; | ) | |
| Basler Electric Company; The Boeing | ) | |
| Company; Brasch Manufacturing Co., | ) | |
| Inc.; Bridgestone Americas Tire | ) | |
| Operations, LLC; Brown Paper Goods | ) | |
| Company; Centurion Investments, Inc.; | ) | |
| Chemisphere Corporation; Chevron | ) | |
| Chemical Company, a division of | ) | |
| Chevron U.S.A. Inc.; Chicago Drum, | ) | |
| Inc.; Clean Harbors, Inc. and related | ) | |
| entity Safety-Kleen Corp.; Conopco, Inc.; | ) | |
| Crane Company; C. R. Metal Products, | ) | |
| Inc.; CMC Bridgeview, Inc.; Deluxe | ) | |
| Corporation; DJR Holdings; Dorma USA | ) | |
| Inc.; The Dow Chemical Company; Dow | ) | |
| Screw Products, Inc.; EMCO Chemical | ) | |
| Distributors, Inc.; Etnyre International, | ) | |
| LTD; Ford Motor Company; Gardner | ) | |
| Denver, Inc.; The Grigoleit Company; | ) | |
| Group O, Inc.; Hartley Marine LLC | ) | |
| (f/k/a Hartley Marine Corp. d/b/a Walker | ) | |
| MidstreamFuel and Supply) and related | ) | |

1

SLC-7072881-5

entity Walker Paducah Corp.; Heritage )
Environmental Services Inc.; )
Homewood Disposal Services, Inc.; )
Hunter Engineering; Independent )
Concrete Pipe, Co.; Interlake Mecalux, )
Inc.; Interstate Chemical Company, )
Inc.; INX International Ink Co., *f/k/a* )
Acme Printing Ink Company; J.D. )
Streett and Company, Inc.; The )
Knapheide Manufacturing Company; )
KV Pharmaceutical Company; LHB )
Industries, Inc.; Lincoln Industrial )
Corporation; M & M Service Company; )
Magna Visual, Inc.; Martin Engineering )
Company; Masterchem Brands, Inc.; )
MeadWestvaco Consumer Packaging )
Group, LLC; Merck Sharp & Dohme )
Corp.; Mervis Industries, Inc.; Metalico- )
Granite City, Inc.; Mid-America )
Protective Coatings, Inc.; Mid-States )
Paint & Chemical Company; Midwest )
Petroleum Company; Missouri )
Department of Transportation; )
Mitsubishi Motors North America, Inc.; )
Nascote Industries, Inc.; Nashua )
Corporation; National Coatings Inc.; )
Nordenia USA Inc.; Nordyne LLC; )
Norfolk Southern Railway Company; )
North American Lighting, Inc.; Park )
Corporation; Penn Aluminum )
International, Inc.; PerkinElmer, Inc.; )
Perma-Fix Environmental Services, )
Inc.; The Premcor Refining Group, Inc.; )
Quaker Chemical Corporation; Regal- )
Beloit Corporation; Rexam Beverage )
Can Company; Rhodia, Inc., a member )
of the Solvay Group; Sinclair & Rush, )
Inc.; Standardaero Business Aviation )
Services, LLC; Superior Oil Company, )
Inc.; Swan Corporation; Teva )
Pharmaceutical USA, Inc.; Texas )
Eastern Transmission, LP; Titan )
International, Inc.; Titan Tube )
Fabricators, Inc.; Tnemec Company, )
Inc.; True Manufacturing Co., Inc.; )
Universal Printing Company; US Paint )
Corporation; US Tape & Label )
Corporation; Valentec Wells, LLC; )
Whirlpool Corporation; and )

2

SLC-7072881-5

Williams Patent Crusher and
Pulverizer Company;

Third-Party Defendants.

)
)
)
)
)
)                                              )

## THIRD-PARTY COMPLAINT

Defendants and Third-Party Plaintiffs Pharmacia LLC ("Pharmacia") and Solutia Inc. ("Solutia") (collectively "Third-Party Plaintiffs"), by and through their undersigned attorneys, file this Third-Party Complaint and allege as follows:

### NATURE OF THE ACTION

1.      The United States initially brought this civil action against Pharmacia and Solutia pursuant to § 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.), as amended ("CERCLA") for recovery of response costs allegedly incurred by the United States in connection with an Administrative Order for Remedial Design and Interim Remedial Action, Docket No. V-W-02-C-716 (the "UAO"), issued by the United States Environmental Protection Agency ("USEPA") pursuant to § 106 of CERCLA (42 U.S.C. § 9606), and for recovery of associated prejudgment interest on such costs.  The United States alleges that the UAO required Pharmacia and Solutia and others to implement interim remedial measures as part of a groundwater operable unit ("Sauget Groundwater OU") interim remedy intended to control releases of contaminated groundwater into the Mississippi River from the Sauget Area 1 and Area 2 Superfund sites.  The United States alleges it incurred response costs both in connection with overseeing implementation of the work required under the UAO and in connection with enforcement activities relating to issuance and implementation of the UAO.  The United States further seeks, in the form of declaratory relief, a finding that Pharmacia and Solutia will be liable for anticipated future response costs as provided in § 9613(g)(2) of CERCLA (42 U.S.C. § 9613(g)(2)).

3

2.      The filing of this Third-Party Complaint institutes a civil action against the Third-Party Defendants named herein pursuant to §§ 107 and 113(f)(1) of CERCLA (42 U.S.C. §§ 9607 and 9613(f)), for contribution and cost recovery with respect to any costs incurred by Pharmacia and Solutia, or to be incurred by Pharmacia and Solutia in the future, related to the performance of implementing the Sauget Groundwater OU interim remedy.  This Third-Party Complaint seeks to hold Third-Party Defendants legally responsible to pay their fair share of the costs associated with the implementation of the UAO's provisions which are the subject of the United States' action against Third-Party Plaintiffs.

3.      Third-Party Defendants failed to respond to and participate in the United States' UAO and, therefore, declined to share in the costs associated with implementation of the Sauget Groundwater OU interim remedy.  Of the more than seventy (75) entities named in the UAO, only Pharmacia and Solutia have taken any action to address the Sauget Groundwater OU interim remedy.

4.      To the extent Pharmacia and Solutia have liability, Third-Party Defendants are liable pursuant to § 107 of CERCLA (42 U.S.C. § 9607) and§ 113(f) of CERCLA (42 U.S.C. § 9613(f)), because they failed take any action to implement the Sauget Groundwater OU interim remedy and/or failed to reimburse Pharmacia, Solutia, or the United States for response costs incurred in implementing the Sauget Groundwater OU interim remedy. Additionally, Third-Party Plaintiffs seek declaratory relief that the Third-Party Defendants will remain liable for future response costs as provided in § 113(g)(2) of CERCLA (42 U.S.C. § 9613(g)(2)).

4

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to §§ 107(a) and 113(b) of CERCLA (42 U.S.C. §§ 9607(a) and 9613(b)), and pursuant to 28 U.S.C. §§ 1331 and 1345.

6.      Venue is proper in this district pursuant to § 113(b) of CERCLA (42 U.S.C. § 9613(b)), and 28 U.S.C. § 1391(b) because the release or threat of release of hazardous substances giving rise to this claim and performance of the Sauget Groundwater OU interim remedy occurred in this district.

## THIRD-PARTY PLAINTIFFS

7.      Pharmacia LLC ("Pharmacia") is a Delaware limited liability company.  The company formerly known as Monsanto Company changed its name to Pharmacia Corporation on March 31, 2000 and, more recently, changed its corporate entity to a limited liability company.  Pharmacia's principal place of business is located in New York, New York.

8.      Solutia Inc. ("Solutia") is a Delaware corporation that is licensed to do business and transacts business in Illinois.  Solutia was incorporated on April 1, 1997.

## THIRD-PARTY DEFENDANTS

9.      Upon information and belief, **Actuant Corporation** is a Wisconsin corporation with its principal office in Menomonee Falls, WI, and is corporate successor to **Actown Electrocoil, Inc.**

10.      Upon information and belief, **Alco Industries, Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in Norristown, Pennsylvania, and did business under the assumed name **Ehrhardt Tool & Machine Company**.

5

SLC-7072881-5

11.     Upon information and belief, **Allied Healthcare Products, Inc., f/k/a Chemetron – Medical Products, Inc.,** is a Delaware corporation with its principal place of business in St. Louis, Missouri, and is the corporate successor to or has done business as **Allied Health Care**.

12.     Upon information and belief, **American Nickeloid Company** is an Illinois corporation with its corporate headquarters in Peru, Illinois.

13.     Upon information and belief, **American Recreation Products, LLC** is a Delaware corporation with its principal place of business or corporate headquarters in Chesterfield, Missouri, and is corporate successor to or has done business as **American Recreation Products, Inc.** and **American Recreation Products**.

14.     Upon information and belief, **Arris International, Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in Suwanee Georgia.

15.     Upon information and belief, **Asbury Automotive St. Louis, L.L.C.** is a Delaware Corporation with its corporate headquarters in Duluth, Georgia, and has done business as **Plaza Motor Co**.

16.     Upon information and belief, **Associated Electric Cooperative, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Springfield, Missouri, and is corporate successor to or did business as **AECI Mining**.

17.     Upon information and belief, **Bachman Machine Company** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

6

SLC-7072881-5

18.     Upon information and belief, **Baker Hughes Incorporated** is a Delaware corporation with its principal place of business or corporate headquarters in Houston, TX, and corporate successor to **Petrolite Corporation**.

19.     Upon information and belief, **Baldor Electric Company, BBB Inc.** is a Missouri corporation with its corporate headquarters in Fort Smith, Arkansas and a member of the ABB Group, and is corporate successor to or has done business as **Baldor Electric Co.**

20.     Upon information and belief, **Basler Electric Company** is an Illinois corporation with its corporate headquarters in Highland, Illinois.

21.

22.     Upon information and belief, **The Boeing Company** is a Delaware Corporation with its principal place of business or corporate headquarters in Chicago, Illinois, and is the corporate successor to **Boeing Military Airplane Co.**

23.     Upon information and belief, **Brasch Manufacturing Co., Inc.** is a Missouri corporation with its corporate headquarters in Maryland Heights, Missouri, and is corporate successor to or did business as **Brash Manufacturing Co.**

24.     Upon information and belief, **Bridgestone Americas Tire Operations, LLC**, is a Delaware corporation with its principal place of business or corporate headquarters in Nashville, Tennessee.

25.     Upon information and belief, **Brown Paper Goods Company** is a Delaware Corporation with its principal place of business in Waukegan, Illinois.

**26.**     Upon information and belief, **Centurion Investments, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Chesterfield,

7

Missouri, and is corporate successor to or has done business as **Aviation Material & Tech Sup.**

27.     Upon information and belief, **Chemisphere Corporation** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or did business as **Chemisphere, Inc.**

28.     Upon information and belief, **Chevron Chemical Company, a division of Chevron U.S.A. Inc.**, is a Delaware Corporation with its principal place of business or corporate headquarters in San Ramon, California, and is corporate successor to or did business as Chevron Chemical Company.

29.     Upon information and belief, **Chicago Drum, Inc.** is a Illinois Corporation with its principal place of business or corporate headquarters in Chicago, Illinois, and is corporate successor to **ACME Barrel Company**.

30.     Upon information and belief, **Clean Harbors, Inc.** is a Massachusetts corporation with its principal place of business or corporate headquarters in Norwell, Massachusetts and related entity **Safety-Kleen Corp.** is a Delaware Corporation with its principal place of business or corporate headquarters in Richardson, Texas.

31.     Upon information and belief, **Conopco, Inc.** is a New York corporation with its principal office or place of business in Englewood Cliffs, New Jersey, and is corporation successor to or has done business as **Unilever Supply Chain, Inc.** and **Chesebrough-Ponds Inc.**

32.     Upon information and belief, **Crane Company** is a Delaware Corporation with its principal place of business or corporate headquarters in Stamford, Connecticut, and is corporate successor to or did business as **Crane National Vendors**.

8

33.     Upon information and belief, **C. R. Metal Products, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or did business as **C.R. Metal Products**.

34.     Upon information and belief, **CMC Bridgeview, Inc.** is an Illinois Corporation with its corporate headquarters in Chicago, Illinois, and formerly known as **Chicago Finished Metals, Inc.**

35.     Upon information and belief, **Deluxe Corporation** is a Minnesota corporation with its principal place of business or corporate headquarters in Shoreview, Minnesota, and is corporate successor to **Deluxe Check Printers Incorporated**, which did business under the assumed name **Deluxe Check Printers**.

36.     Upon information and belief, **DJR Holdings** is an Illinois Corporation with its corporate headquarters in Skokie, Illinois, and is corporate successor to or did business **Futura Coatings**.

37.     Upon information and belief, **Dorma USA Inc.** is a Delaware corporation with its principal place of business in Reamstown, Pennsylvania, and is corporate successor to **Door Controls, Inc.**,

38.     Upon information and belief, **The Dow Chemical Company** is a Delaware Corporation with its principal place of business or corporate headquarters in Midland, Michigan.

39.     Upon information and belief, **Dow Screw Products, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to **DSP, Inc.**

9

40.    Upon information and belief, **EMCO Chemical Distributors, Inc.** is an Illinois corporation with it principal place of business or corporate headquarters in North Chicago, Illinois, and is successor corporation to or has done business as **Mozel Inc.**

41.    Upon information and belief, **Etnyre International, LTD** is an Illinois Corporation with its corporate headquarters in Oregon, Illinois, and is corporate successor to **E. D. Etnyre  & Co.**

42.    Upon information and belief, **Ford Motor Company** is a Delaware Corporation with its principal place of business or corporate headquarters in Dearborn, Michigan.

43.    Upon information and belief, **Gardner Denver, Inc.** is a Delaware corporation with its principal place of business in Wayne, Pennsylvania.

44.    Upon information and belief, **The Grigoleit Company** is an Illinois Corporation with its principal place of business or corporate headquarters in Decatur, Illinois, and has done business as **Grigoleit**.

45.    Upon information and belief, **Group O, Inc.** is an Illinois Corporation with its corporate headquarters in Milan, Illinois, and is the corporate successor to **R & O Specialties, Inc.**

46.    Upon information and belief, **Hartley Marine LLC (f/k/a Hartley Marine Corp. d/b/a Walker Midstream Fuel and Supply)** is a Delaware corporation with its principal place of business or corporate headquarters in  Paducah, Kentucky, and related entity **Walker Paducah Corp.** is a Delaware corporation with its principal place of business or corporate headquarters in Nashville, Tennessee, and is corporate successor to **Walker Midstream Fuel**.

10

47.     Upon information and belief, **Heritage Environmental Services Inc.** is an Indiana Corporation with its corporate headquarters in Indianapolis, Indiana.

48.     Upon information and belief, **Homewood Disposal Services, Inc.** is an Illinois Corporation with its corporate headquarters in Homewood, Illinois, and does business under the assumed name **Tinley Park Disposal**.

49.     Upon information and belief, **Hunter Engineering Company** is a Missouri corporation with its principal place of business or corporate headquarters in Bridgeton, Missouri.

50.     Upon information and belief, **Independent Concrete Pipe, Co.** is an Ohio corporation with its principal place of business or corporate headquarters in Indianapolis, Indiana, and is corporate successor to **Price Brothers Concrete Pipe**.

*51*.     Upon information and belief, **Interlake Mecalux, Inc.** is a Delaware corporation with its principal place of busines or corporate headquarters in Melrose Park, Illinois, and is corporate successor to or formerly did business as **Interlake Material Handling.**

52.     Upon information and belief, **Interstate Chemical Company, Inc.** is a Pennsylvania corporation with its corporate headquarters in in Hermitage, Pennsylvania, and is corporation successor to or did business as **Coleman Chemical Corporation**, **Coleman Chemical & Oil**, and **SEA Corporation**.

53.     Upon information and belief, **INX International Ink Co.,** *f/k/a* **Acme Printing Ink Company,** is a Delaware Corporation with its principal place of business or corporate headquarters in Schaumburg, Illinois, and is the corporate successor to or has done business as **ACME Printing Inc. Co.**

11

54.    Upon information and belief, **J.D. Streett and Company, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Maryland Heights, Missouri.

55.    Upon information and belief, **The Knapheide Manufacturing Company** is an Illinois Corporation with its principal place of business in Quincy, Illinois.

56.    Upon information and belief, **KV Pharmaceutical Company** is a Delaware Corporation with its principal place of business or corporate headquarters in Chesterfield, Missouri.

57.    Upon information and belief, **LHB Industries, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

58.    Upon information and belief, **Lincoln Industrial Corporation** is a Delaware Corporation with its principal place of business or corporate headquarters in Minneapolis, Minnesota, and is the corporate successor to or has done business as **Lincoln-St. Louis**.

59.    Upon information and belief, **M & M Service Company** is an Illinois Corporation with its principal place of business in Carlinville, Illinois, and is corporate successor to / has done business as **Macoupin Service Co.**

60.    Upon information and belief, **Magna Visual, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

61.    Upon information and belief, **Martin Engineering Company** is an Illinois Corporation with its principal place of business in Neponset, Illinois.

62.    Upon information and belief, **Masterchem Brands, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Taylor,

12

Michigan, and is corporate successor to **Caldwell Paint Manufacturing Company, Inc.** and **Masterchem Industries, Inc.**

63.     Upon information and belief, **MeadWestvaco Consumer Packaging Group, LLC** is an Illinois corporation with its principal place of business or corporate headquarters in Richmond, Virginia, and is the successor corporation to **AGI, LLC.**

64.     Upon information and belief, **Merck Sharp & Dohme Corp.** is a New Jersey Corporation with its principal place of business or corporate headquarters in Whitehouse Station, New Jersey, and is the corporate successor to or has done business as **Merck & Co., Inc., Schering-Plough Corporation, Schering Corporation, and Diosynth, Inc.**

65.     Upon information and belief, **Mervis Industries, Inc.** is an Illinois corporation with its corporate headquarters in Danville, Illinois.

66.     Upon information and belief, **Metalico-Granite City, Inc.** is an Illinois corporation with its corporate headquarters in Cranford, New Jersey.

67.     Upon information and belief, **Mid-America Protective Coatings, Inc.** is an Illinois Corporation with its principal place of business in Addison, Illinois.

68.     Upon information and belief, **Mid-States Paint & Chemical Company** is a Missouri corporation with its principal place of business or corporate headquarters in Crestwood, Missouri.

69.     Upon information and belief, **Midwest Petroleum Company** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

SLC-7072881-5

70.     Upon information and belief, the **Missouri Department of Transportation** and the **Missouri Highway and Transportation Commission** are governmental agencies of the State of Missouri, headquartered in Jefferson City, Missouri.

71.     Upon information and belief, **Mitsubishi Motors North America, Inc.** is a California corporation with its principal place of business or corporate headquarters in Cypress, California.

72.     Upon information and belief, **Nascote Industries, Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in Nashville, Illinois, and is the corporate successor to or did business as **Nascote Industries**.

73.     Upon information and belief, **Nashua Corporation** is a Massachusetts corporation with its principal place of business or corporate headquarters in Stamford, Connecticut.

74.     Upon information and belief, **National Coatings Inc.** is a Michigan corporation with its principal place of business or corporate headquarters in Traverse City, Michigan, and is corporate successor to or did business as **National Coatings Inc.**

75.     Upon information and belief, **Nordenia USA Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Jackson, Missouri, and is the corporate successor to or did business as **M & W Packaging U.S. Inc.**

76.     Upon information and belief, **Nordyne LLC** is a Delaware corporation with its corporate headquarters in O'Fallon, Missouri, and formerly did business as **Nordyne, Inc.**

77.     Upon information and belief, **Norfolk Southern Railway Company** is a Virginia corporation with its principal place of business or corporate headquarters in Norfolk, Virginia.

14

SLC-7072881-5

78. Upon information and belief, **North American Lighting, Inc.** is a Michigan Corporation with its corporate headquarters in Paris, Illinois, and is a wholly-owned subsidiary of Koito Manufacturing Co., Ltd., of Japan.

79. Upon information and belief, **Park Corporation** is a Nevada corporation with its corporate headquarters in Cleveland, Ohio, and is the owner or successor company to the owner of the **Park Corp Bircher Semple Industrial Complex** located in St. Louis, Missouri.

80. Upon information and belief, **Penn Aluminum International, Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in Murphysboro, Illinois, and is corporate successor to or has done business as **Penn Aluminum International**.

81. Upon information and belief, **PerkinElmer, Inc.** is a Massachusetts corporation with its principal place of business or corporate headquarters in Waltham, Massachusetts, and is corporate successor to **EG&G – Vactec.**

82. Upon information and belief, **Perma-Fix Environmental Services, Inc.** is a Delaware Corporation with its corporate headquarters in Atlanta, Georgia.

83. Upon information and belief **The Premcor Refining Group, Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in San Antonio, Texas.

84. Upon information and belief, **Quaker Chemical Corporation** is a Pennsylvania corporation with its corporate headquarters in Conshohocken, Pennsylvania, and is corporate successor to **Multi-Chemical Products, Inc.**

15

85.    Upon information and belief, **Regal-Beloit Corporation** is a Wisconsin corporation with its principal place of business or corporate headquarters in Beloit, Wisconsin, and it is the corporate successor to **Jackel Inc**.

86.    Upon information and belief, **Rexam Beverage Can Company** is a Delaware corporation with its principal place of business or corporate headquarters in Chicago, Illinois.

87.    Upon information and belief, **Rhodia, Inc., a member of the Solvay Group,** is a Delaware corporation with its principal place of business or corporate headquarters in Cranbury, New Jersey, and is corporate successor to the **McIntyre Group**.

88.    Upon information and belief, **Sinclair & Rush, Inc.** is a Delaware corporation with its corporate headquarters in Arnold, Missouri, and corporate successor to **Krane Manufacturing Company.**

89.    Upon information and belief **Standardaero Business Aviation Services, LLC** is a Delaware corporation with its corporate headquarters in Tempe, Arizona, and corporate successor to **Garrett Aviation Services, LLC.**

90.    Upon information and belief, **Superior Oil Company, Inc.** is an Indiana corporation with its principal place of business or corporate headquarters in Indianapolis, Indiana, and is corporate successor or formerly did business as **Superior Solvents & Chemicals**.

91.    Upon information and belief, **Swan Corporation** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

92.     Upon information and belief, **Teva Pharmaceutical USA, Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in Philadelphia, Pennsylvania.

93.     Upon information and belief **Texas Eastern Transmission, LP** is a Delaware corporation with its corporate headquarters in Tempe, Arizona.

94.     Upon information and belief, **Titan International, Inc.** is an Illinois corporation with its principal place of business or corporate headquarters in Quincy, Illinois.

95.     Upon information and belief, **Titan Tube Fabricators, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

96.     Upon information and belief, **Tnemec Company, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Kansas City, Missouri, and is corporate successor to or has done business as **Themec Co., Inc.** and **Tuemec Co**.

97.     Upon information and belief, **True Manufacturing Co., Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in O'Fallon, Missouri.

98.     Upon information and belief, **Universal Printing Company** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

99.     Upon information and belief, **US Paint Corporation** is a Delaware corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

17

100.    Upon information and belief, **US Tape & Label Corporation** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

101.    Upon information and belief, **Valentec Wells, LLC** is a Delaware corporation with its principal place of business or corporate headquarters in Greeneville, South Carolina, and is corporate successor to or has done business as **Valentec Kisco, Inc.**

102.    Upon information and belief **Whirlpool Corporation** is a Delaware corporation with its principal place of business or corporate headquarters in Benton Harbor, Michigan, and is corporate successor to **Maytag Herrin Laundry Products** and **Maytag Galesburg Refrigeration Products.**

103.    Upon information and belief, **Williams Patent Crusher and Pulverizer Company** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

## USEPA-DESIGNATED SUPERFUND SITES

104.    The USEPA designated "Sauget Area 2" as a Superfund Site, which is located on the eastern side of the Mississippi River within the boundaries of the City of East St. Louis and the Villages of Cahokia and Sauget, Illinois.

105.    The entirety of Sauget Area 2 exists within the Mississippi American Bottoms Floodplain, which topographically constitutes primarily flat bottomland with a surface that generally slopes from north to south and from east to west toward the Mississippi River.

106.    Within Sauget Area 2, USEPA designated five separate areas (Sites O, P, Q, R and S).

107.    USEPA also designated another Superfund Site east of Sauget Area 2, which it named "Sauget Area 1."  USEPA further sub-divided Sauget Area 1 into several areas

18

representing stream segments and former disposal sites (Segments A – F of Dead Creek and Sites G, H, I, L, M and N).

108.  The area surrounding Sauget Area 1 contains various industrial facilities, including the W.G. Krummrich plant to the north of Sauget Area 1 and the Clayton Chemical facility west of Sauget Area 1.

109.  During low river stage conditions, groundwater within Sauget Area 1 and Sauget Area 2 flows generally from east to west and releases to the Mississippi River. When flood stage occurs in the Mississippi River, groundwater flow reverses, moving from west to east.

110.  Site R in Sauget Area 2 consists of a former landfill in Sauget, Illinois, between the flood control levee and the Mississippi River.

111.  Extensive sampling at Site R has detected volatile and semi-volatile organic compounds, polychlorinated biphenyls, metals, and pesticides.

### CLAYTON CHEMICAL COMPANY SITE

112.  The Clayton Chemical Company site ("CCC Site") encompasses approximately 7 acres in Sauget, Illinois, located due east of Site R between Pitzman Ave. and American Bottom Rd.

113.  From approximately 1929 to 1961, GM&O Railroad, n/k/a the Illinois Central Railroad Company ("the Railroad") owned and operated the CCC Site.  In 1929, the Railroad constructed a sixteen-stall roundhouse on a portion of the CCC Site to conduct railroad equipment repairs and maintenance.  Types of waste that may have been generated and disposed on the CCC Site during this time frame are those typical of a rail yard in those years, including solvents, off-specification or contaminated fuels, used lubricating oil, and waste wash water.

19

114.    In 1961, Clayton Chemical Company ("Clayton") leased the CCC Site from the Railroad in order to recycle and recover used solvents and waste oil.  By 1981, Clayton had purchased the CCC Site from the Railroad.  Clayton continued operating a waste oil and solvent recycling business on the CCC Site from 1961 until November 1996.

115.    As part of its operations, Clayton accepted waste oil, solvents, and other toxic chemicals and substances from dozens of entities seeking to dispose of such wastes.

116.    Between November 1996 and 1998, the CCC Site was operated as a waste oil and spent solvent recycling and recovery business by a new entity, the Resource Recovery Group ("RGG").

117.    In 1998, Illinois EPA denied a RCRA permit for RRG's operations.  Soon thereafter, RGG ceased accepting hazardous substances at the CCC Site.  In 2001, Illinois EPA referred the CCC Site to USEPA.

**GROUNDWATER CONTAMINATION**

118.    Upon information and belief, during the years 1980 through 1998, Third-Party Defendants arranged for or caused to be delivered, wastes qualified as "hazardous substances," as that term is defined in §§ 101(14) and 107(a) of CERCLA (42 U.S.C. §§ 9601(14) and 9607(a)), to the CCC Site.

119.    Upon information and belief, these hazardous substances contaminated the soil and groundwater beneath the CCC Site.

120.    Based on groundwater testing and expert opinion testimony, it is believed that elevated levels of hazardous substances found in the groundwater beneath Site R and recovered by the Sauget Groundwater OU interim remedy, originated from the CCC Site facility.

121.    Upon information and belief, groundwater beneath the CCC property has flowed offsite and continues to flow downgradient towards the Missouri River, contributing

20

to the contamination of groundwater beneath Sauget Area 2, Site R, and at the Sauget Groundwater OU interim remedy.

122.    The Sauget Groundwater OU interim remedy and the sources of contamination, including the CCC Site, are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

123.    There have been "releases," and "threatened releases" of hazardous substances at or from the Sauget Groundwater OU interim remedy and the CCC Site, as those terms are defined in §§ 101(29) and 101(22) of CERCLA (42 U.S.C. §§ 9601(29) and (22)).

### INTERIM GROUNDWATER REMEDY

124.    On or about April 1, 2002, Third-Party Plaintiffs submitted a Focused Feasibility Study ("FFS") to USEPA, which proposed an interim groundwater remedy consisting of a slurry wall to be built at Site R parallel to the Mississippi River.

125.    On or about September 30, 2002, USEPA executed a Record of Decision ("ROD") for an Interim Groundwater Remedy for the Sauget Groundwater OU interim remedy at Sauget Area 2 Site R.  USEPA found that groundwater contamination downgradient from various industrial facilities, including the facility on the CCC Site, was releasing into the Mississippi River.  Based upon available data and a Baseline Ecological Risk Assessment, USEPA concluded that action needed to be taken to prevent groundwater contamination from releasing into the Mississippi River.  This action was found by USEPA to be necessary to protect public health or welfare or the environment from actual or threatened releases of hazardous substances into the environment.

126.    As proposed in the ROD, the Interim Groundwater Remedy includes the installation of a groundwater extraction system at Site R, which is designed to prevent the release of impacted groundwater to the Mississippi River downgradient of the following

21

SLC-7072881-5

source areas:  Area 2 Sites O, Q, R and S; Sauget Area 1 Site I; the W.G. Krummrich Plant; the Clayton Chemical facility, and various other industrial facilities in Sauget.

127.    The selected remedy constitutes an interim remedial action for the groundwater operable unit at the Sauget Area 2 Site.  USEPA has not yet issued a ROD for the final remedial action to address groundwater contamination.

128.    The selected remedy included the installation of a 3,500 foot long U-shaped, fully penetrating, jet-grouted barrier wall installed between the down gradient boundary of Sauget Area 2 Site R and the Mississippi River, institutional controls, groundwater recovery wells, the discharge and treatment of extracted groundwater, groundwater quality monitoring, groundwater level monitoring, and surface water monitoring.

129.    Also on or about September 30, 2002, USEPA issued an Unilateral Administrative Order for Remedial Design and Interim Remedial Action ("UAO") to Pharmacia, Solutia, and 74 other potentially responsible parties pursuant to the authority vested in the President of the United States to enter into such orders by §§104, 106(a), and 122 of CERCLA (42 U.S.C. §§ 9604, 9606(a), and 9622), as delegated to the Administrator of USEPA by Executive Order No. 12580, January 23, 1987, 52 Fed. Reg. 2926, and further delegated to the Regional Administrators on September 13, 1987, by USEPA Delegation Nos. 14-14 and 14-14A, and to the Director, Superfund Division, Region 5, by Delegation No. 14-14B on September 30, 2002.  Both Pharmacia and Solutia are parties to the UAO.

130.    The UAO directed recipients to implement the interim remedial measures selected by the USEPA in the September 30, 2002 ROD referred to above.  Of the 76 potentially responsible parties issued the UAO, only Third-Party Plaintiffs contributed to implementing the Sauget Groundwater OU interim remedy.  Failure to comply with the UAO subjects each named Respondent to civil penalties in the amount of $27,500 per day and possible punitive damages.

22

131.    Third-Party Plaintiffs constructed the Sauget Groundwater OU interim remedy at a cost of approximately $28 million.  The ongoing costs associated with maintaining the Sauget Groundwater OU interim remedy has been approximately $2 million annually and it is expected such costs will continue indefinitely.

132.    Releases and threatened releases at the Sauget Groundwater OU interim remedy have caused and will continue to cause the Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. §§ 9601(25), 9607(a)).

133.    USEPA has incurred costs in overseeing work conducted by Third-Party Plaintiffs pursuant to the UAO.  While Third-Party Plaintiffs have reimbursed USEPA for a portion of these oversight costs, USEPA alleges it remains unreimbursed for response costs as more fully described in the United States' Amended Complaint.

134.    In 2013, the United States filed its Amended Complaint against the Third-Party Plaintiffs seeking reimbursement for response costs, enforcement costs, prejudgment interest, and costs of bringing its action.  The United Sates also seeks a declaratory judgment binding on any subsequent actions to recover further response costs in connection with the Sauget Groundwater OU interim remedy.

135.    Third-Party Defendants have benefited from implementation of the Sauget Groundwater OU interim remedy in that the Sauget Groundwater OU interim remedy fully contains groundwater contamination originating from the CCC Site facility from flowing down-gradient into the Mississippi River.

136.    Third-Party Plaintiffs' implementation of the Sauget Groundwater OU interim remedy has saved millions of dollars in groundwater remediation costs at the CCC Site that would otherwise be necessary to prevent offsite movement to the Mississippi River

SLC-7072881-5

of contaminated groundwater originating at the CCC Site facility for which Third-Party Defendants would have liability for the costs of such remediation.

## COUNT I

### (Cost Recovery – Response Costs Incurred Pursuant to the UAO)

137.    Third-Party Plaintiffs reallege and incorporate paragraphs 1 through 119 as if fully set forth herein.

138.    Sites O, P, Q, R and S in Sauget Area 2 are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

139.    The CCC Site and the Sauget Groundwater OU interim remedy are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

140.    Third-Party Defendants are "person(s)" within the meaning of § 101(21) of CERCLA (42 U.S.C. § 9601(21)).

141.    At all times relevant to this action, each Third-Party Defendant named herein arranged for disposal or treatment, arranged with a transporter for transport for disposal or treatment, or accepted for transport to the CCC Site facility, "hazardous substances" from which there were "releases" and "threatened releases" of "hazardous substances" into the environment at the CCC Site and Sauget Area 2 within the meaning of CERCLA §§ 101(14), 101(20), 101(22), and 107(a) (42 U.S.C. § § 9601(14), 9601(20), 9601(22) and 9607(a)).

142.    These "releases" and "threatened releases" of hazardous substances at the CCC Site and Sauget Area 2 have caused Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. § § 9601(25) and 9607(a)), for work performed under the UAO for implementation of the Sauget Groundwater OU interim remedy.

24

143. These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the UAO for implementation of the Sauget Groundwater OU interim remedy.

144. The response actions taken and the response costs incurred by Third-Party Plaintiffs and the United States at the Sauget Groundwater OU interim remedy are consistent with, and will continue to be consistent with, the National Contingency Plan, which was promulgated under § 105(a) of CERCLA (42 U.S.C. § 9605(a)), and codified at 40 C.F.R. Part 300. ("NCP"), 40 C.F.R. Part 300.

145. To date, the Third-Party Defendants named herein have failed to provide all reasonable cooperation and assistance requested pursuant to the UAO and further failed to reimburse Third-Party Plaintiffs or USEPA for any of the above-referenced response costs, even though they have benefited from the implementation of the Sauget Groundwater OU interim remedy.

146. Third-Party Defendants are jointly and severally liable to the Third-Party Plaintiffs for recovery of all costs expended on response actions, including oversight and enforcement costs for which Third-Party Plaintiffs are required to reimburse the United States, in connection with recovery of hazardous substances released at the CCC Site and recovered by the Sauget Groundwater OU interim remedy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pharmacia and Solutia respectfully requests that this Court:

(a)    Enter a judgment for cost recovery against Third-Party Defendants pursuant to § 107(a) of CERCLA (42 U.S.C. § 9607(a)), for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the UAO for implementation of the Sauget Groundwater OU interim

SLC-7072881-5

remedy at Site R within Sauget Area 2, including interest and any response costs Third-Party Plaintiffs are required to pay USEPA for its oversight or enforcement;

(b)    Enter a declaratory judgment that each of the Third-Party Defendants are jointly and severally liable for all response costs that will be incurred by Third-Party Plaintiffs in the future related to performing response activities at Sauget Area 2 Site R in implementing the Sauget Groundwater OU interim remedy; and

(c)    Order such other and further relief as this Court may deem just and proper.

## COUNT II
### (Contribution)

147.    Third-Party Plaintiffs reallege and incorporate Paragraphs 1 through 129 as if fully set forth herein.

148.    Third-Party Defendants are "person(s)" within the meaning of § 101(21) of CERCLA (42 U.S.C. § 9601(21)).

149.    As previously alleged, each Third-Party Defendant is a liable or potentially liable party under § 107(a) of CERCLA (42 U.S.C. § 9607(a)).

150.    At all times relevant to this action, each Third-Party Defendant named herein has caused "releases" and "threatened releases" of "hazardous substances" into the environment at the CCC Site and Sauget Area 2 within the meaning of §§ 101(14), 101(20), 101(22), and 107(a) of CERCLA (42 U.S.C. §§ 9601(14), 9601(20), 9601(22) and 9607(a)).

151.    These "releases" and "threatened releases" of hazardous substances at the CCC Site and Sauget Area 2 have caused Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C.

SLC-7072881-5

§§ 9601(25) and 9607(a)) for work performed under the UAO for implementation of the Sauget Groundwater OU interim remedy.

152.   The United States filed its civil action against Third-Party Plaintiffs pursuant to § 107 of CERCLA (42 U.S.C. § 9607) seeking recovery of response costs and interest allegedly incurred by the United States in connection with the UAO and implementation of the Sauget Groundwater OU interim remedy.

153.   These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the UAO for implementation of the Sauget Groundwater OU interim remedy.

154.   These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the National Contingency Plan, which was promulgated under § 105(a) of CERCLA (42 U.S.C. § 9605(a)), and codified at 40 C.F.R. Part 300.

155.   Pharmacia and Solutia, pursuant to § 113(f) of CERCLA (42 U.S.C. § 9613(f)) are entitled to contribution from each of the Third-Party Defendants with respect to all response costs incurred or to be incurred by Third-Party Plaintiffs, including interest and oversight reimbursement, in performing response activities pursuant to the UAO for implementation of the Sauget Groundwater OU interim remedy at Site R within Sauget Area 2;

156.   To date, the Third-Party Defendants named herein have failed to reimburse Third-Party Plaintiffs or USEPA for any of the above-referenced response costs.

157.   Third-Party Defendants are liable to the Third-Party Plaintiffs for their equitable share of all costs of response actions, including oversight and enforcement costs for which Third-Party Plaintiffs are required to reimburse the United States, in connection

SLC-7072881-5

with recovery of hazardous substances released at the CCC Site and recovered by the Sauget Groundwater OU interim remedy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pharmacia and Solutia respectfully requests that this Court:

(a)   Enter a judgment of contribution against each of the Third-Party Defendants pursuant to § 113(f) of CERCLA (42 U.S.C. § 9613(f)), for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the UAO for implementation of the Sauget Groundwater OU interim remedy at Site R within Sauget Area 2, including interest and any costs Third-Party Plaintiffs are required to pay USEPA for its oversight or enforcement;

(b)   Enter a declaratory judgment that each of the Third-Party Defendants are liable for their equitable share of all response costs that will be incurred by Third-Party Plaintiffs in the future related to performing response activities at Sauget Area 2 Site R in implementing the Sauget Groundwater OU interim remedy; and

(c)   Order such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By:   /s/ Joseph G. Nassif
       Joseph G. Nassif, #6200809
       Jason A. Flower, #6279097
       Jonathan R. Waldron, #6292058
       Husch Blackwell LLP
       190 Carondelet Plaza, Ste. 600

28

SLC-7072881-5

St. Louis, Missouri 63105
Joseph.Nassif@huschblackwell.com
Telephone:  (314)480-1500
Fax: (314)480-1505

**Attorneys for Pharmacia LLC
and Solutia Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, on this 22d day of November, 2013, which will send notification of such filing to:

Ignacia S. Moreno, Assistant Attorney General
Robert E. Maher, Jr., Acting Deputy Chief
Michael J. Zoeller
michael.zoeller@usdoj.gov
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7611
Washington, DC  20044

Stephen R. Wiggington, United States Attorney
James Hipkiss, Assistant United States Attorney
James.Hipkiss@usdoj.gov
Office of the United States Attorney for the
Southern District of Illinois
Nine Executive Drive
Fairview Heights, IL  62208

**And,** by U.S. first class mail, postage prepaid, to:

Thomas J. Martin
Associate Regional Counsel
U.S. Environmental Protection
 Agency-Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL  60604

_____/s/ Joseph G. Nassif_____

29

SLC-7072881-5