IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PHARMACIA LLC (formerly known as MONSANTO COMPANY) and SOLUTIA INC., | ) ) ) |
| | ) |
|      Defendants/Third Party Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANHEUSER-BUSCH IN-BEV WORLDWIDE INC., AMOCO OIL COMPANY, BELL SPORTS INC., BJC HEALTH SYSTEMS, CHRISTIAN HOSPITAL NORTHEAST-NORTHWEST BREWER SCIENCE, INC., BROWN SHOE CO.,  INC., BUTLER MANUFACTURING, A Subsidiary of BLUESCOPE STEEL, LTD., CONTINENTAL TIRE THE AMERICAS, LLC, DOYLE EQUIPMENT MANUFACTURING COMPANY, DR. PEPPER SNAPPLE GROUP, INC.,  FORT TRANSFER CO., HALLMARK CARDS, INCORPORATED, HUSSMANN CORPORATION, ILLINOIS TOOL WORKS, INC., KEMPEN PAINT COMPANY, KEY INDUSTRIES, INC., MII, INC., MILES CHEVROLET, INC., QUINCY COMPRESSOR LLC, ATLAS COPCO NORTH AMERICA, LLC, ROCK TENN CP,  LLC, SIEMENS CORPORATION, MERCY ST. FRANCIS HOSPITAL, ST. LOUIS UNIVERSITY SUNOCO, INCORPORATED, UNIVAR, INC. UNITED TECHNOLOGIES KEYSTONE STEEL & WIRE CO./KEYSTONE CONSOLIDATED INDUSTRIES, INC. And KANSAS CITY SOUTHERN, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
|      Third Party Defendants. | ) |

Case No. 3:13-cv-138-DGW-PMF

1

## ADDITIONAL THIRD-PARTY COMPLAINT

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Third-Party Plaintiffs Pharmacia LLC ("Pharmacia") and Solutia Inc. ("Solutia") (collectively "Third-Party Plaintiffs"), by and through their undersigned attorney, file this Additional Third-Party Complaint,[1] and hereby state as follows:[2]

### NATURE OF THE ACTION

1.     The United States initially brought this civil action against Pharmacia and Solutia pursuant to § 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 et seq.), as amended ("CERCLA") for recovery of response costs allegedly incurred by the United States in connection with an Administrative Order for Remedial Design and Interim Remedial Action, Docket No. V-W-02-C-716 (the "UAO"), issued by the United States Environmental Protection Agency ("USEPA") pursuant to § 106 of CERCLA (42 U.S.C. § 9606), and for recovery of associated prejudgment interest on such costs.  The United States alleges that the UAO required Pharmacia and Solutia and others to implement interim remedial measures as part of a groundwater operable unit ("Sauget Groundwater OU") interim remedy intended to control releases of contaminated groundwater into the Mississippi River from the Sauget Area 1 and Area 2 Superfund sites.  The United States alleges it incurred response costs both in connection with overseeing implementation of the work required under the UAO and in connection with enforcement activities relating to issuance and implementation of the

---

[1] Pharmacia and Solutia have already filed Third-Party and Amended Third-Party Complaints. Because of a conflict issue, the allegations against the entities named herein must be asserted in a separate pleading filed by different counsel.  This Additional Third-Party Complaint does not, therefore, supersede any other complaint filed by Third-Party Plaintiffs through their other counsel.
[2] To the extent that the averments in this Additional Third-Party Complaint are inconsistent with any of Pharmacia's or Solutia's future responses to the allegations in the United States' Complaint or any of Pharmacia's or Solutia's affirmative defenses, said averments are stated in the alternative to and without waiver of any of those prospective responses or affirmative defenses.

UAO. The United States further seeks, in the form of declaratory relief, a finding that Pharmacia and Solutia will be liable for anticipated future response costs as provided in § 9613(g)(2) of CERCLA (42 U.S.C. § 9613(g)(2)).

2.    The filing of this Third-Party Complaint institutes a civil action against the Third-Party Defendants named herein pursuant to §§ 107 and 113(f)(1) of CERCLA (42 U.S.C. §§ 9607 and 9613(f)), for contribution and cost recovery with respect to any costs incurred by Pharmacia and Solutia, or to be incurred by Pharmacia and Solutia in the future, related to the performance of implementing the Sauget Groundwater OU interim remedy and/or performance of the response actions related to the Sauget Area 2 sites, including Site S and Site Q, to address hazardous substances transported from the Clayton Chemical Company site ("CCC Site") to the Sauget Area 2 sites. This Third-Party Complaint seeks to hold Third-Party Defendants legally responsible to pay their fair share of the costs associated with the implementation of the UAO's provisions which are the subject of the United States' action against Third-Party Plaintiffs.

3.    A number of the Third-Party Defendants failed to respond to and participate in the United States' UAO and, therefore, declined to share in the costs associated with implementation of the Sauget Groundwater OU interim remedy. Of the more than seventy (75) entities named in the UAO, only Pharmacia and Solutia have taken any action to address the Sauget Groundwater OU interim remedy.

4.    To the extent Pharmacia and Solutia have liability, Third-Party Defendants are liable pursuant to § 107 of CERCLA (42 U.S.C. § 9607) and § 113(f) of CERCLA (42 U.S.C. § 9613(f)) because they failed take any action to implement the Sauget Groundwater OU interim remedy and/or remediate the hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q. Third-Party Defendants have likewise failed to

3

reimburse Pharmacia, Solutia, or the United States for response costs incurred in implementing the Sauget Groundwater OU interim remedy and/or response costs incurred addressing hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q.  Additionally, Third-Party Plaintiffs seek a declaratory ruling that Third-Party Defendants will remain liable for future response costs as provided in § 113(g)(2) of CERCLA (42 U.S.C. § 9613(g)(2)).

**JURISDICTION AND VENUE**

5.	This Court has jurisdiction over the subject matter of this action pursuant to §§ 107(a) and 113(b) of CERCLA (42 U.S.C. §§ 9607(a) and 9613(b)), and pursuant to 28 U.S.C. §§ 1331 and 1345.

6.	Venue is proper in this district pursuant to § 113(b) of CERCLA (42 U.S.C. § 9613(b)), and 28 U.S.C. § 1391(b) because the release or threat of release of hazardous substances giving rise to this claim and performance of the Sauget Groundwater OU interim remedy occurred in this district.

**THIRD-PARTY PLAINTIFFS**

7.	Pharmacia LLC ("Pharmacia") is a Delaware limited liability company.  The company formerly known as Monsanto Company changed its name to Pharmacia Corporation on March 31, 2000, and, more recently, changed its corporate entity to a limited liability company. Pharmacia's principal place of business is located in New York, New York.

8.	Solutia Inc. ("Solutia") is a Delaware corporation that is licensed to do business and transacts business in Illinois.  Solutia was incorporated on April 1, 1997.

**THIRD-PARTY DEFENDANTS**

4

9. Upon information and belief, Anheuser-Busch In-Bev Worldwide, Inc., is a corporation, with its principal place of business or corporate headquarters in Missouri and is the corporate successor to or has done business as Anheuser Busch, Inc.

10. Upon information and belief, Amoco Oil Company is a corporation, with its principal place of business or corporate headquarters in Texas.

11. Upon information and belief, Bell Sports, Inc., is a corporation, with its principal place of business or corporate headquarters in California.

12. Upon information and belief, BJC Health Systems is a corporation, with its principal place of business or corporate headquarters in  Missouri, and is the corporate successor to or has done business as Christian Hospital Northeast-Northwest.

13. Upon information and belief, Brewer Science, Inc., is a corporation, with its principal place of business or corporate headquarters in Missouri.

14. Upon information and belief, Brown Shoe Co., Inc. is a corporation, with its principal place of business or corporate headquarters in Missouri.

15. Upon information and belief, Butler Manufacturing, a subsidiary of Bluescope Steel, Ltd. Is a corporation, with its principal place of business or corporate headquarters in Missouri.

16. Upon information and belief, Continental Tire The Americas, LLC is a corporation, with its principal place of business or corporate headquarters in South Carolina, and is the corporate successor to or has done business as Continental Tire North America.

17. Upon information and belief, Doyle Equipment Manufacturing Company, is a corporation, with its principal place of business or corporate headquarters in Illinois.

18.     Upon information and belief, Dr. Pepper Snapple Group, Inc., is a corporation, with its principal place of business or corporate headquarters in Texas and is the corporate successor to or has done business as Cadbury Beverages.

19.     Upon information and belief, Fort Transfer Co., is a corporation with its principal place of business or corporate headquarters in Illinois and is the corporate successor to or has done business as Diagraph-Herrin ITW.

20.     Upon information and belief, Hallmark Cards, Incorporated, is a corporation with its principal place of business or corporate headquarters in Missouri and is the corporate successor to or has done business as Hallmark Metamora Fixtures.

21.     Upon information and belief, Hussmann Corporation is a corporation with its principal place of business or corporate headquarters in Missouri.

22.     Upon information and belief, Illinois Tool Works, Inc., is a corporation with its principal place of business or corporate headquarters in Illinois, and is the corporate successor to or has done business as Diagrah-Herrin ITW, Superb Oil and ITW Shakeproof.

23.     Upon information and belief, Kempen Paint Company is a corporation with its principal place of business or corporate headquarters in Missouri.

24.     Upon information and belief, Key Industries, Inc., is a corporation with its principal place of business or corporate headquarters in Missouri.

25.     Upon information and belief, Mii, Inc., is a corporation with its principal place of business or corporate headquarters in Illinois, and is the corporate successor to or has done business as Myers Industries.

26.     Upon information and belief, Miles Chevrolet, Inc., is a corporation with its principal place of business or corporate headquarters in Kansas.

27.    Upon information and belief, Quincy Compressor LLC is a corporation with its principal place of business or corporate headquarters in Alabama, and is the corporate successor to or has done business as Goodrich Corporation.

28.    Upon information and belief, Atlas Copco North America LLC is a corporation with its principal place of business or corporate headquarters in New Jersey and is the corporate successor to or has done business as Goodrich Corporation.

29.    Upon information and belief, Rock Tenn CP, LLC., is a corporation with its principal place of business or corporate headquarters in Georgia and is the corporate successor to or has done business as Jefferson Smerfit, Container Corporation of America and Continental Forest Industries.

30.    Upon information and belief, Siemens Corporation is a corporation with its principal place of business or corporate headquarters in New York.

31.    Upon information and belief, Mercy St. Francis Hospital is a corporation with its principal place of business or corporate headquarters in Missouri and is the corporate successor to or has done business as St. Francis Hospital.

32.    Upon information and belief, St. Louis University is a corporation with its principal place of business or corporate headquarters in Missouri.

33.    Upon information and belief, Sunoco, Incorporated, is a corporation with its principal place of business or corporate headquarters in Pennsylvania and is the corporate successor to or has done business as Carboline Company.

34.    Upon information and belief, Univar, Inc., is a corporation with its principal place of business or corporate headquarters in Washington and is the corporate successor to or has done business as ChemCentral Corporation.

7

35. Upon information and belief, Keystone Consolidated Industries, Inc., is a Delaware corporation with its principal place of business or corporate headquarters in Illinois and is corporate successor to or has done business as Keystone Steel & Wire Company.

36. Upon information and belief, Kansas City Southern, Inc. is a Delaware corporation with its principal place of business or corporate headquarters in Missouri.

## USEPA-DESIGNATED SUPERFUND SITES

37. The USEPA designated "Sauget Area 2" as a Superfund Site, which is located on the eastern side of the Mississippi River within the boundaries of the City of East St. Louis and the Villages of Cahokia and Sauget, Illinois.

38. The entirety of Sauget Area 2 exists within the Mississippi American Bottoms Floodplain, which topographically constitutes primarily flat bottomland with a surface that generally slopes from north to south and from east to west toward the Mississippi River.

39. Within Sauget Area 2, USEPA designated five separate areas (Sites O, P, Q, R and S).

40. USEPA also designated another Superfund Site east of Sauget Area 2, which it named "Sauget Area 1." USEPA further sub-divided Sauget Area 1 into several areas representing stream segments and former disposal sites (Segments A – F of Dead Creek and Sites G, H, I, L, M and N).

41. The area surrounding Sauget Area 1 contains various industrial facilities, including the W.G. Krummrich plant to the north of Sauget Area 1 and the Clayton Chemical facility west of Sauget Area 1.

42.    During low river stage conditions, groundwater within Sauget Area 1 and Sauget Area 2 flows generally from east to west and releases to the Mississippi River.  When flood stage occurs in the Mississippi River, groundwater flow reverses, moving from west to east.

43.    Site R in Sauget Area 2 consists of a former landfill in Sauget, Illinois, between the flood control levee and the Mississippi River.

44.    Extensive sampling at Site R has detected volatile and semi-volatile organic compounds, polychlorinated biphenyls, metals, and pesticides.

45.    Site S in Sauget Area 2 consists of several acres of land located immediately south of the CCC Site, about 100 feet west-southwest of Site O, to the east of Site R.

46.    Extensive sampling at Site S has detected volatile and semi-volatile organic compounds ("VOCs" and "SVOCs"), polychlorinated byphenyls ("PCBs"), metals, and pesticides.

47.    Site Q in Sauget Area 2 is known as the Sauget & Company Landfill.  The northern portion (approximately 400 feet wide) is situated between the CCC Site and Trade Waste on the east and Site R on the west.  The southern section is located south of Site R along the Mississippi River.

48.    Extensive sampling at Site Q has detected VOCs and SVOCs, PCBs, metals, and pesticides.

**CLAYTON CHEMICAL COMPANY SITE**

49.    The CCC Site encompasses approximately 7 acres in Sauget, Illinois, located due east of Site R between Pitzman Ave. and American Bottom Rd.

50.    From approximately 1929 to 1961, GM&O Railroad, n/k/a the Illinois Central Railroad Company ("the Railroad") owned and operated the CCC Site.  In 1929, the Railroad

9

constructed a sixteen-stall roundhouse on a portion of the CCC Site to conduct railroad equipment repairs and maintenance. Types of waste that may have been generated and disposed on the CCC Site during this time frame are those typical of a rail yard in those years.

51.     In 1961, Clayton Chemical Company ("Clayton") leased the CCC Site from the Railroad in order to recycle and recover used solvents and waste oil. By 1981, Clayton had purchased the CCC Site from the Railroad. Clayton continued operating a waste oil and solvent recycling business on the CCC Site from 1961 until November 1996.

52.     As part of its operations, Clayton accepted waste oil, solvents, and other toxic chemicals and substances from dozens of entities seeking to dispose of such wastes.

53.     Between November 1996 and 1998, the CCC Site was operated as a waste oil and spent solvent recycling and recovery business by a new entity, the Resource Recovery Group ("RRG").

54.     In 1998, Illinois EPA denied a RCRA permit for RRG's operations. Soon thereafter, RRG ceased accepting hazardous substances at the CCC Site. In 2001, Illinois EPA referred the CCC Site to USEPA.

**SITE Q**

55.     Site Q is located in the Villages of Sauget and Cahokia, Illinois, and is bordered by Site R and the old Union Electric Power Plant on the north, the Illinois Central Gulf Railroad and the United States Corps of Engineers ("U.S. COE") flood control levee on the east, and the Mississippi River on the west. Site Q is bisected by a rail spur, and covers approximately 225 acres of land.

56.     Upon information and belief, Paul Sauget and Sauget & Company operated a landfill at Site Q from approximately 1957 to 1975 and accepted wastes from Sauget area industries and numerous other sources.

57.     Upon information and belief, open dumping continued at Site Q until the early 1990s.

58.     Upon information and belief, the wastes disposed at Site Q included drums of chemical and industrial wastes, solid and liquid chemical and industrial wastes, septic tank pumpings, salvage material, construction debris, and fly ash.

59.     Upon information and belief, USEPA conducted a removal action at Site Q in 1995 that involved the excavation of drums and soils contaminated with PCBs, organics and metals.

60.     Upon information and belief, USEPA conducted a removal action at Site Q in 1999-2000, and excavated more than 3,000 drums and more than 15,000 tons of contaminated soil.

61.     Upon information and belief, soil samples collected at Site Q have revealed elevated levels of certain "hazardous substances," as that term is defined in Section 101(14) of CERCLA (42 U.S.C. §9601(14)), including, but not limited to, VOCs, PCBs, and heavy metals.

62.     Upon information and belief, Site Q was used by Clayton Chemical to dispose of wastes from the CCC Site facility.

## SITE S

63.     Site S occupies several acres of land located to the west-southwest of Site O.

64. Upon information and belief, Site S was owned by the Village of Sauget and was operated by Paul Sauget and Sauget & Company as a waste disposal site from 1973 to the late 1970s.

65. Upon information and belief, Paul Sauget and Sauget & Company constructed a pit on Site S that was used to dispose of stillbottoms that resulted from steam-stripping during solvent recovery at the CCC Site until the late 1970s.

66. Upon information and belief, wastes transported from the CCC Site facility and disposed of on Site S originated from the CCC Site facility and Third-Party Defendants.

67. Upon information and belief, soil samples collected at Site S have revealed elevated levels of certain "hazardous substances," as that term is defined in Section 101(14) of CERCLA (42 U.S.C. §9601(14)), including VOCs, SVOCs, PCBs and heavy metals.

68. Upon information and belief, groundwater samples collected in the area of Site S have revealed elevated levels of certain hazardous substances including VOCs, SVOCs and metals.

## GROUNDWATER CONTAMINATION

69. Upon information and belief, during the years 1961 through 1998, Third-Party Defendants arranged for or caused to be delivered, wastes qualified as "hazardous substances," as that term is defined in §§ 101(14) and 107(a) of CERCLA (42 U.S.C. §§ 9601(14) and 9607(a)), to the CCC Site.

70. Upon information and belief, these hazardous substances contaminated the soil and groundwater beneath the CCC Site, Site S, and a portion of Site Q.

71.    Based on groundwater testing and expert opinion testimony, it is believed that elevated levels of hazardous substances recovered by the Sauget Groundwater OU interim remedy, originated from the CCC Site facility, Site S, and portions of Site Q.

72.    Upon information and belief, groundwater beneath the CCC property, Site S, and portions of Site Q has flowed offsite and continues to flow downgradient towards the Missouri River, contributing to the contamination of groundwater beneath Sauget Area 2 and at the Sauget Groundwater OU interim remedy.

73.    The Sauget Groundwater OU interim remedy and the sources of contamination, including the CCC Site, are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

74.    There have been "releases," and "threatened releases" of hazardous substances at or from the CCC Site, Site S, and Site Q, as those terms are defined in §§ 101(29) and 101(22) of CERCLA (42 U.S.C. §§ 9601(29) and (22)).

## CLAYTON CHEMICAL CONTAMINATION OF AREA 2 SITES

75.    Upon information and belief, Third-Party Defendants arranged for or caused to be delivered, wastes containing "hazardous substances," as that term is defined in §§ 101(14) and 107(a) of CERCLA (42 U.S.C. §§ 9601(14) and 9607(a)), to the CCC Site, which were later transferred to the Area 2 sites.

76.    Upon information and belief, these hazardous substances contaminated the soil and groundwater beneath the Area 2 sites, including Site S and Site Q.

77.    There have been "releases," and "threatened releases" of hazardous substances at the Area 2 sites, including Site S and Site Q, as those terms are defined in §§ 101(29) and 101(22) of CERCLA (42 U.S.C. §§ 9601(29) and (22)).

78.    Upon information and belief, Clayton transported wastes from the CCC Site to the Area 2 sites, including Site Q and Site S.

79.    Upon information and belief, still bottoms containing hazardous substances were transported from the CCC Site and disposed of at Site Q and Site S that contained hazardous substances originating with Third-Party Defendants.

80.    Upon information and belief, hazardous substances deposited at Site Q and Site S are contributing to the contamination of the soil and groundwater beneath Sauget Area 2.

81.    Third-Party Plaintiffs have incurred costs performing a Remedial Investigation and Feasibility Study on the Sauget Area 2 sites, including Site Q and Site S, and EPA has issued a Record of Decision selecting a remedy for Site Q and Site S.  Third-Party Plaintiffs may incur costs in the future performing the EPA-selected remedy for Site Q and Site S.

82.    Site Q and Site S are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

### INTERIM GROUNDWATER REMEDY

83.    Upon information and belief, the deposition of hazardous substances within Area 2 that originated with the CCC Site facility has also resulted in the migration of contaminated groundwater toward the Mississippi River.

84.    On or about April 1, 2002, Third-Party Plaintiffs submitted a Focused Feasibility Study ("FFS") to USEPA, which proposed an interim groundwater remedy consisting of a slurry wall to be built at Site R parallel to the Mississippi River.

85.    On or about September 30, 2002, USEPA executed a Record of Decision ("ROD") for an Interim Groundwater Remedy for the Sauget Groundwater OU interim remedy at Sauget Area 2 Site R.  USEPA found that groundwater contamination downgradient from

various industrial facilities, including the facility on the CCC Site, was releasing into the Mississippi River. Based upon available data and a Baseline Ecological Risk Assessment, USEPA concluded that action needed to be taken to prevent groundwater contamination from releasing into the Mississippi River. This action was found by USEPA to be necessary to protect public health or welfare or the environment from actual or threatened releases of hazardous substances into the environment.

86.     As proposed in the ROD, the Interim Groundwater Remedy includes the installation of a groundwater extraction system at Site R, which is designed to prevent the release of impacted groundwater to the Mississippi River downgradient of the following source areas: Area 2 Sites O, Q, R and S; Sauget Area 1 Site I; the W.G. Krummrich Plant; the Clayton Chemical facility, and various other industrial facilities in Sauget.

87.     The selected remedy constitutes an interim remedial action for the groundwater operable unit at the Sauget Area 2 Site. USEPA has not yet issued a ROD for the final remedial action to address groundwater contamination.

88.     The selected remedy included the installation of a 3,500 foot long U-shaped, fully penetrating, jet-grouted barrier wall installed between the down gradient boundary of Sauget Area 2 Site R and the Mississippi River, institutional controls, groundwater recovery wells, the discharge and treatment of extracted groundwater, groundwater quality monitoring, groundwater level monitoring, and surface water monitoring.

89.     Also on or about September 30, 2002, USEPA issued an Unilateral Administrative Order for Remedial Design and Interim Remedial Action ("UAO") to Pharmacia, Solutia, and 74 other potentially responsible parties pursuant to the authority vested in the President of the United States to enter into such orders by §§104, 106(a), and 122 of CERCLA

15

(42 U.S.C. §§ 9604, 9606(a), and 9622), as delegated to the Administrator of USEPA by Executive Order No. 12580, January 23, 1987, 52 Fed. Reg. 2926, and further delegated to the Regional Administrators on September 13, 1987, by USEPA Delegation Nos. 14-14 and 14-14A, and to the Director, Superfund Division, Region 5, by Delegation No. 14-14B on September 30, 2002.  Both Pharmacia and Solutia are parties to the UAO.

90.     The UAO directed recipients to implement the interim remedial measures selected by the USEPA in the September 30, 2002 ROD referred to above.  Of the 76 potentially responsible parties issued the UAO, only Third-Party Plaintiffs contributed to implementing the Sauget Groundwater OU interim remedy.  Failure to comply with the UAO subjects each named Respondent to civil penalties in the amount of $27,500 per day and possible punitive damages.

91.     Third-Party Plaintiffs constructed the Sauget Groundwater OU interim remedy at a cost of approximately $28 million.  The ongoing costs associated with maintaining the Sauget Groundwater OU interim remedy has been approximately $2 million annually and it is expected such costs will continue indefinitely.

92.     Releases and threatened releases at the Sauget Groundwater OU interim remedy have caused and will continue to cause the Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. §§ 9601(25), 9607(a)).

93.     USEPA has incurred costs in overseeing work conducted by Third-Party Plaintiffs pursuant to the UAO.  While Third-Party Plaintiffs have reimbursed USEPA for a portion of these oversight costs, USEPA alleges it remains unreimbursed for response costs as more fully described in the United States' Amended Complaint.

94. In 2013, the United States filed its Amended Complaint against the Third-Party Plaintiffs seeking reimbursement for response costs, enforcement costs, prejudgment interest, and costs of bringing its action. The United Sates also seeks a declaratory judgment binding on any subsequent actions to recover further response costs in connection with the Sauget Groundwater OU interim remedy.

95. Third-Party Defendants have benefited from implementation of the Sauget Groundwater OU interim remedy in that the Sauget Groundwater OU interim remedy fully contains groundwater contamination originating from the CCC Site facility, Site S, and portions of Site Q from flowing down-gradient into the Mississippi River.

96. Third-Party Plaintiffs' implementation of the Sauget Groundwater OU interim remedy has saved millions of dollars in groundwater remediation costs at the CCC Site that would otherwise be necessary to prevent offsite movement to the Mississippi River of contaminated groundwater originating at the CCC Site facility for which Third-Party Defendants would have liability for the costs of such remediation.

## COUNT I

### (Cost Recovery – Response Costs Incurred Pursuant to the UAO)

97. Third-Party Plaintiffs reallege and incorporate paragraphs 1 through the immediately preceding paragraph as if fully set forth herein.

98. Sites O, P, Q, R and S in Sauget Area 2 are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

99. The CCC Site and the Sauget Groundwater OU interim remedy are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

100.    Third-Party Defendants are "person(s)" within the meaning of § 101(21) of CERCLA (42 U.S.C. § 9601(21)).

101.    At all times relevant to this action, each Third-Party Defendant named herein arranged for disposal or treatment, arranged with a transporter for transport for disposal or treatment, or accepted for transport to the CCC Site facility, "hazardous substances" from which there were "releases" and "threatened releases" of "hazardous substances" into the environment at the CCC Site and Sauget Area 2 within the meaning of CERCLA §§ 101(14), 101(20), 101(22), and 107(a) (42 U.S.C. § § 9601(14), 9601(20), 9601(22) and 9607(a)).

102.    These "releases" and "threatened releases" of hazardous substances at the CCC Site and Sauget Area 2 have caused, and will continue to cause, Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. § § 9601(25) and 9607(a)), including but not limited to work performed under the UAO for implementation of the Sauget Groundwater OU interim remedy.

103.    These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the UAO for implementation of the Sauget Groundwater OU interim remedy, the Administrative Order on Consent for Remedial Investigation and Feasibility Study for the Area 2 sites and potential future agreements and orders.

104.    The response actions taken and the response costs incurred by Third-Party Plaintiffs and the United States at the Sauget Groundwater OU interim remedy and at the Sauget Area 2 sites are consistent with, and will continue to be consistent with, the National Contingency Plan, which was promulgated under § 105(a) of CERCLA (42 U.S.C. § 9605(a)), and codified at 40 C.F.R. Part 300. ("NCP"), 40 C.F.R. Part 300.

105.    To date, Third-Party Defendants named herein have failed to provide all reasonable cooperation and assistance requested pursuant to the UAO and further failed to reimburse Third-Party Plaintiffs or USEPA for any of the above-referenced response costs, even though they have benefited from the implementation of the Sauget Groundwater OU interim remedy.

106.    Third-Party Defendants are jointly and severally liable to the Third-Party Plaintiffs for recovery of all costs expended on response actions, including oversight and enforcement costs for which Third-Party Plaintiffs are required to reimburse the United States, in connection with recovery of hazardous substances released at the CCC Site and recovered by the Sauget Groundwater OU interim remedy.

107.    Third-Party Defendants are jointly and severally liable to the Third-Party Plaintiffs for recovery of all costs expended on response actions, including oversight and enforcement costs for which Third-Party Plaintiffs are required to reimburse the United States, in connection with remediation to address hazardous substances, including still bottoms, transported from the CCC Site to the Sauget Area 2 sites including Sites S and Q.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pharmacia and Solutia respectfully requests that this Court:

(a)    Enter a judgment for cost recovery against Third-Party Defendants pursuant to § 107(a) of CERCLA (42 U.S.C. § 9607(a)), for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the UAO within Area 2, including but not limited to implementation of the Sauget Groundwater OU interim remedy at Site R, including interest and any response

costs Third-Party Plaintiffs are required to pay USEPA for its oversight or enforcement;

(b)     Enter a judgment for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the Administrative Order on Consent to perform a Remedial Investigation and Feasibility Study related to the Sauget Area 2 sites, including Site S and Site Q, to address hazardous substances, including still bottoms, transported form the CCC Site to the Sauget Area 2 sites.

(c)     Enter a declaratory judgment that each of the Third-Party Defendants are jointly and severally liable for all response costs that will be incurred by Third-Party Plaintiffs in the future related to performing response activities pursuant to the UAO at Sauget Area 2 Sites R, S, and Q, including implementing of the Sauget Groundwater OU interim remedy, and for any and all response cost incurred by Third-Party Plaintiffs under any future order related to performing response activities to address hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q; and

(d)     Order such other and further relief as this Court may deem just and proper.

## COUNT II
### (Contribution)

108.    Third-Party Plaintiffs reallege and incorporate Paragraphs 1 through the immediately preceding paragraph as if fully set forth herein.

109.    Third-Party Defendants are "person(s)" within the meaning of § 101(21) of CERCLA (42 U.S.C. § 9601(21)).

110.    As previously alleged, each Third-Party Defendant is a liable or potentially liable party under § 107(a) of CERCLA (42 U.S.C. § 9607(a)).

111. At all times relevant to this action, each Third-Party Defendant named herein has caused "releases" and "threatened releases" of "hazardous substances" into the environment at the CCC Site and Sauget Area 2 within the meaning of §§ 101(14), 101(20), 101(22), and 107(a) of CERCLA (42 U.S.C. §§ 9601(14), 9601(20), 9601(22) and 9607(a)).

112. These "releases" and "threatened releases" of hazardous substances at the CCC Site and Sauget Area 2 have caused Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. §§ 9601(25) and 9607(a)) for work performed under the UAO for implementation of the Sauget Groundwater OU interim remedy.

113. The United States filed its civil action against Third-Party Plaintiffs pursuant to § 107 of CERCLA (42 U.S.C. § 9607) seeking recovery of response costs and interest allegedly incurred by the United States in connection with the UAO and implementation of the Sauget Groundwater OU interim remedy.

114. These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the UAO for implementation of the Sauget Groundwater OU interim remedy and the Administrative Order on Consent for Remedial Investigation and Feasibility Study at the Sauget Area 2 sites.

115. These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the National Contingency Plan, which was promulgated under § 105(a) of CERCLA (42 U.S.C. § 9605(a)), and codified at 40 C.F.R. Part 300.

116. Pharmacia and Solutia, pursuant to § 113(f) of CERCLA (42 U.S.C. § 9613(f)) are entitled to contribution from each of the Third-Party Defendants with respect to all response

21

costs incurred or to be incurred by Third-Party Plaintiffs, including interest and oversight reimbursement, in performing response activities pursuant to the UAO for implementation of the Sauget Groundwater OU interim remedy, the Administrative Order on Consent for Remedial Investigation and Feasibility Study, and any future agreement or orders related to the Sauget Area 2 sites;

117.    To date, Third-Party Defendants named herein have failed to reimburse Third-Party Plaintiffs or USEPA for any of the above-referenced response costs.

118.    Third-Party Defendants are liable to the Third-Party Plaintiffs for their equitable share of all costs of response actions, including oversight and enforcement costs for which Third-Party Plaintiffs are required to reimburse the United States, in connection with recovery of hazardous substances released at the CCC Site and recovered by the Sauget Groundwater OU interim remedy, and hazardous substances released at other Area 2 sites that originated at the CCC Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pharmacia and Solutia respectfully requests that this Court:

(a)    Enter a judgment of contribution against each of the Third-Party Defendants pursuant to § 113(f) of CERCLA (42 U.S.C. § 9613(f)), for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the UAO within Area 2, including but not limited to implementation of the Sauget Groundwater OU interim remedy at Site R, including interest and any costs Third-Party Plaintiffs are required to pay USEPA for its oversight or enforcement;

(b)  Enter a judgment for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the Administrative Order on Consent to perform a Remedial Investigation and Feasibility Study related to the Sauget Area 2 sites, including Site S and Site Q, to address hazardous substances, including still bottoms, transported form the CCC Site to the Sauget Area 2 sites.

(c)  Enter a declaratory judgment that each of the Third-Party Defendants are liable for their equitable share of all response costs that will be incurred by Third-Party Plaintiffs in the future related to performing response activities pursuant to the UAO at Sauget Area 2 Sites R, S, and Q, including implementing of the Sauget Groundwater OU interim remedy, and for any and all response cost incurred by Third-Party Plaintiffs under any future order related to performing response activities to address hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q; and

(d)  Order such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Bernard J. Ysursa

Bernard J. Ysursa #03095754
Cook, Ysursa, Bartholomew, Brauer
        & Shevlin, Ltd.
12 West Lincoln Street
Belleville, IL 62220
(618) 235-3500 Telephone
(618) 235-7286 Facsimile

**Separate conflicts counsel for
Pharmacia LLC and Solutia Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was electronically e-mailed to the Court's public e-mail box on this 23rd day of May 2014.


 /s/ Bernard J. Ysursa