UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CV-00138-NJR-PMF |
| | ) | |
| PHARMACIA LLC, (formerly known as MONSANTO COMPANY) and SOLUTIA INC., | ) ) ) | |
| | ) | |
| Defendants/Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 2120 Investments, Inc; Agfa Corporation; Alberici Constructors, Inc. (f/k/a J.S. Alberici Construction Co., Inc.); Allied Healthcare Products, Inc., f/k/a Chemetron – Medical Products, Inc.; American Nickeloid Company; American Recreation Products, LLC; A.O. Smith Corporation; Austin-Westran LLC; Bemis Company, Inc.; CBS Corporation; Centurion Investments, Inc.; Chemtech Industries of Delaware, LP; Clean Harbors, Inc.; CNH America LLC (f/k/a Case, LLC d/b/a Case Power Equipment, LLC); Conopco, Inc.; Container Distributors, Inc.; Cooper US, Inc.; Country Squire Cleaners, Inc.; Crestwood Industries, Inc.; Croda Ink Corp.; Cupples Products, Inc.; Curtis-Toledo, Inc.; Curwood, Inc.; Danuser Machine Company; Dixon Ticonderoga Company; Don V. Davis Company; Dow Screw Products, Inc.; DRS Sustainment Systems, Inc.; Durable Metals Enterprises, LLC; Eaton Corporation; Elantas PDG, Inc.; Engineered; Products Industries, L.L.C.; Enterprise Leasing Company of STL, LLC; Estron Chemical, Inc.; Fairmont Minerals, Ltd.; Farm to Fork, Inc. and related entities Riley Paint Co., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1

Inc. and Riley Industrial Painting, Inc.;    )
Federal-Mogul Products, Inc.; Florissant    )
Motor Co., Inc.; Flint Group North    )
America Corporation; GlaxoSmithKline    )
Consumer Healthcare, L.P.; Gould    )
Electronics Inc.; Great Dane Limited    )
Partnership; GW Composites, Inc.;    )
Gycor International, Ltd.; H.O.M.E. Inc.;    )
Hayes-Albion Corporation; Henninges    )
Automotive of Keokuk, LLC; Henry    )
Technologies, Inc.; Hitchiner    )
Manufacturing Co., Inc.; Hodell-Natco    )
Industries, Inc.; Homestar Industries of    )
Missouri, Inc.; Homewood Disposal    )
Services, Inc.; Howard Medical    )
Company; Huggins Metal Finishing, Inc.;    )
Hydromat Inc.; Illinois Central Railroad    )
Company and related entity Illinois    )
Central Corporation; Interstate Chemical    )
Company, Inc.; JX Nippon Mining &    )
Metals USA, Inc.; Kimberly-Clark    )
Corporation; Koch Pipeline Company,    )
and related entity L.P. Siegel-Robert,    )
Inc.,; Kronos (US), Inc. and related    )
entities NL Chemicals, Inc., NL    )
Industries, Inc., and NL Spencer Kellogg,    )
Inc.; Kubis Auto Body, Inc.; Kysor    )
Industrial Corporation; Lamont Limited;    )
Libra Industries, Inc.; MagneTek Inc.;    )
Mead O'Brien, Inc.; Mead Technologies,    )
Inc.; Metropolitan St. Louis Sewer    )
District; Mid-America Resources, Inc.;    )
Midwest Petroleum Company; Missouri    )
Department of Corrections; Mitek    )
Corporation; Multiplex Display Fixture    )
Company; Nestlé Purina PetCare    )
Company; Nick's SOS Garage, Inc.;    )
Niedt Enterprises, Inc.; Nooter    )
Corporation; Nordenia USA Inc.; Omega    )
Coating Corporation; Packaging    )
Concepts, Inc.; Pactiv LLC and related    )
entity Pactiv Corporation; Paint &    )
Coatings Ventures, Inc.; Park-Mark, Inc.;    )
Parsons Company, Inc.; Pechiney Plastic    )
Packaging, Inc.; PetroChem Inspection    )
Services, Inc.; Plastic Materials, Inc.;    )

2

Preferred Auto Body, Inc.; Principia        )
College Communications; Professional        )
Equities, Inc.; Protestant Memorial         )
Medical Center, Inc.; Ranken Technical      )
College; Robertson-Ceco II Corporation;     )
Roesch, Inc.; Rogers Enterprises, Inc.;     )
Rogun Services, Inc.; R P & G of            )
Quincy, Inc.; Sandstrom Products            )
Company; Schawk, Inc.; Schlegel             )
Corporation; Sensor Systems, Inc.;          )
Sigma-Aldrich Co. LLC; Sikeston Board       )
of Municipal Utilities; St. Louis Cold      )
Drawn, Inc.; St. Louis Lithographing        )
Company; Standard Machine &                 )
Manufacturing Co.; Standard Sheet Metal     )
Works, Inc.; Stark Manufacturing LLC;       )
Steelcote Manufacturing Company;            )
Sterling Lacquer Manufacturing              )
Company; Sunnen Products Company;           )
Tecumseh Products Company; TG               )
Missouri Corporation; TIN Inc.; True        )
Manufacturing Co., Inc.; U.S. Tool          )
Grinding, Inc.; UM Holdings, Ltd.;          )
United Industries Corporation (d/b/a        )
Chemsico, Inc.); Viad Corp.; Von Weise      )
USA, Inc., and related entities Von         )
Weise, Inc., Von Weise Gear Company;        )
Walter Wurdack, Inc.; Watco                 )
Companies, LLC; Web Print Controls,         )
Co. Inc.; and ZF North America.             )
                                            )

      Third-Party Defendants.

## SECOND AMENDED THIRD-PARTY COMPLAINT

Defendants and Third-Party Plaintiffs Pharmacia LLC ("Pharmacia") and Solutia Inc.

("Solutia") (collectively "Third-Party Plaintiffs"), by and through their undersigned attorneys,

file this Second Amended Third-Party Complaint and allege as follows:

### NATURE OF THE ACTION

1.    The United States initially brought this civil action against Pharmacia and Solutia

pursuant to § 107 of the Comprehensive Environmental Response, Compensation and Liability

3

SLC-7239695-3

Act of 1980 (42 U.S.C. § 9601 et seq.), as amended ("CERCLA") for recovery of response costs allegedly incurred by the United States in connection with an Administrative Order for Remedial Design and Interim Remedial Action, Docket No. V-W-02-C-716 (the "UAO"), issued by the United States Environmental Protection Agency ("USEPA") pursuant to § 106 of CERCLA (42 U.S.C. § 9606), and for recovery of associated prejudgment interest on such costs.  The United States alleges that the UAO required Pharmacia and Solutia and others to implement interim remedial measures as part of a groundwater operable unit ("Sauget Groundwater OU") interim remedy intended to control releases of contaminated groundwater into the Mississippi River from the Sauget Area 1 and Area 2 Superfund sites.  The United States alleges it incurred response costs both in connection with overseeing implementation of the work required under the UAO and in connection with enforcement activities relating to issuance and implementation of the UAO.  The United States further seeks, in the form of declaratory relief, a finding that Pharmacia and Solutia will be liable for anticipated future response costs as provided in § 9613(g)(2) of CERCLA (42 U.S.C. § 9613(g)(2)).

2.    The filing of this Third-Party Complaint institutes a civil action against the Third-Party Defendants named herein pursuant to §§ 107 and 113(f)(1) of CERCLA (42 U.S.C. §§ 9607 and 9613(f)), for contribution and cost recovery with respect to any costs incurred by Pharmacia and Solutia, or to be incurred by Pharmacia and Solutia in the future, related to the performance of implementing the Sauget Groundwater OU interim remedy and/or performance of the response actions related to the Sauget Area 2 sites, including Site S and Site Q, to address hazardous substances transported from the Clayton Chemical Company site ("CCC Site") to the Sauget Area 2 sites.  This Third-Party Complaint seeks to hold Third-Party Defendants legally

4

SLC-7239695-3

responsible to pay their fair share of the costs associated with the implementation of the UAO's provisions which are the subject of the United States' action against Third-Party Plaintiffs.

3.      A number of the Third-Party Defendants failed to respond to and participate in the United States' UAO and, therefore, declined to share in the costs associated with implementation of the Sauget Groundwater OU interim remedy.  Of the more than seventy (75) entities named in the UAO, only Pharmacia and Solutia have taken any action to address the Sauget Groundwater OU interim remedy.

4.      To the extent Pharmacia and Solutia have liability, Third-Party Defendants are liable pursuant to § 107 of CERCLA (42 U.S.C. § 9607) and § 113(f) of CERCLA (42 U.S.C. § 9613(f)) because they failed take any action to implement the Sauget Groundwater OU interim remedy and/or remediate the hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q.  Third-Party Defendants have likewise failed to reimburse Pharmacia, Solutia, or the United States for response costs incurred in implementing the Sauget Groundwater OU interim remedy and/or response costs incurred addressing hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q.  Additionally, Third-Party Plaintiffs seek a declaratory ruling that Third-Party Defendants will remain liable for future response costs as provided in § 113(g)(2) of CERCLA (42 U.S.C. § 9613(g)(2)).

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the subject matter of this action pursuant to §§ 107(a) and 113(b) of CERCLA (42 U.S.C. §§ 9607(a) and 9613(b)), and pursuant to 28 U.S.C. §§ 1331 and 1345.

6. Venue is proper in this district pursuant to § 113(b) of CERCLA (42 U.S.C. § 9613(b)), and 28 U.S.C. § 1391(b) because the release or threat of release of hazardous substances giving rise to this claim and performance of the Sauget Groundwater OU interim remedy occurred in this district.

## THIRD-PARTY PLAINTIFFS

7. Pharmacia LLC ("Pharmacia") is a Delaware limited liability company. The company formerly known as Monsanto Company changed its name to Pharmacia Corporation on March 31, 2000, and, more recently, changed its corporate entity to a limited liability company. Pharmacia's principal place of business is located in New York, New York.

8. Solutia Inc. ("Solutia") is a Delaware corporation that is licensed to do business and transacts business in Illinois. Solutia was incorporated on April 1, 1997.

## THIRD-PARTY DEFENDANTS

9. Upon information and belief, **2120 Investments, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Decatur, Illinois, and is corporate successor to or has done business as **Climate Control, Inc.**

10. Upon information and belief, **Agfa Corporation** is a Delaware corporation, with its principal place of business or corporate headquarters in Elmwood Park, New Jersey, and is corporate successor to or has done business as **Western Litho Plate & Supply**.

11. Upon information and belief, **Alberici Constructors, Inc. (f/k/a J.S. Alberici Construction Co., Inc.)** is a Missouri Corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

12. Upon information and belief, **Allied Healthcare Products, Inc., f/k/a Chemetron – Medical Products, Inc.,** is a Delaware corporation with its principal place of

6

business in St. Louis, Missouri, and is the corporate successor to or has done business as **Allied Health Care**.

13.     Upon information and belief, **American Nickeloid Company** is an Illinois corporation with its corporate headquarters in Peru, Illinois.

14.     Upon information and belief, **American Recreation Products, LLC** is a Delaware corporation with its principal place of business or corporate headquarters in Chesterfield, Missouri, and is corporate successor to or has done business as **American Recreation Products, Inc.** and **American Recreation Products**.

15.     Upon information and belief, **A.O. Smith Corporation** is a Delaware corporation, with its principal place of business or corporate headquarters in Milwaukee, Wisconsin, and is corporate successor to or has done business as **MagneTek, Inc.**, **MagneTek Century Electric, Century Electric Company**, **Century Electric Inc.**, and / or **Century Electric**.

16.     Upon information and belief, **Austin-Westran LLC** is an Illinois corporation with its principal place of business or corporate headquarters in Byron, Illinois.

17.     Upon information and belief, **Bemis Company, Inc.** is a Missouri Corporation, with its principal place of business or corporate headquarters in Neenah, Wisconsin, and is corporate successor to or has done business as **Lustour Corporation**.

18.     Upon information and belief, **CBS Corporation** is a Delaware corporation, with its principal place of business or corporate headquarters in New York, New York, and is corporate successor to or has done business as **Westinghouse Licensing Corporation and Westinghouse Electric**.

7

19.    Upon information and belief, **Centurion Investments, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Chesterfield, Missouri, and is corporate successor to or has done business as **Aviation Material & Tech Sup.**

20.    Upon information and belief, **Chemtech Industries of Delaware, LP** is a Delaware corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **Chemtech Industries, Inc.**, **Chemtech Industries L.P.**, and/or **Chemtech Corporation**.

21.    Upon information and belief, **Clean Harbors, Inc.** is a Massachusetts corporation with its principal place of business or corporate headquarters in Norwell, Massachusetts and related entity **Safety-Kleen Corp.** is a Delaware Corporation with its principal place of business or corporate headquarters in Richardson, Texas.

22.    Upon information and belief, **CNH America LLC (f/k/a Case, LLC d/b/a Case Power Equipment, LLC)** is a Delaware corporation, with its principal place of business or corporate headquarters located in Racine Wisconsin, and is corporate successor to or has done business as **CNH Global N.V.**, **Case/DMI**, and **Case Corp.**

23.    Upon information and belief, **Conopco, Inc.** is a New York corporation with its principal office or place of business in Englewood Cliffs, New Jersey, and is corporate successor to or has done business as **Unilever Supply Chain, Inc.** and **Chesebrough-Ponds Inc.**

24.    Upon information and belief, **Container Distributors, Inc.** is an Illinois corporation with its principal place of business or corporate headquarters in Venice, Illinois.

25.    Upon information and belief, **Cooper US, Inc.** is a Delaware corporation, with its principal place of business or corporate headquarters in Houston, Texas, and is corporate successor to or has done business as **Cooper Industries, Inc.** and **McGraw-Edison Company**.

SLC-7239695-3

26.    Upon information and belief, **Country Squire Cleaners, Inc.** is a Missouri Corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

27.    Upon information and belief, **Crestwood Industries, Inc**. is an Illinois corporation, with its principal place of business or corporate headquarters in Mundalein, Illinois, and is corporate successor to or has done business as **Ritepoint Corporation** and/or **Ritepoint Pen & Pencil Company**.

28.    Upon information and belief, **Croda Ink Corp.** is a Delaware corporation, with its principal place of business or corporate headquarters in Parsippany, New Jersey, and is corporate successor to or has done business as **Richardson Ink. Co.** and/or **Richardson Company**.

29.    Upon information and belief, **Cupples Products, Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis Missouri, and is corporate successor to or had done business as **Cupples Prod**.

30.    Upon information and belief, **Curtis-Toledo, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

31.    Upon information and belief, **Curwood, Inc.** is a Delaware Corporation, with its principal place of business or corporate headquarters in Oskosh, Wisconsin, and is corporate successor to or has done business as **Lustour Corporation**.

32.    Upon information and belief, **Danuser Machine Company** is a Missouri corporation with its principal place of business or corporate headquarters in Fulton, Missouri.

33.    Upon information and belief, **Dixon Ticonderoga Company** is a Delaware corporation, with its principal place of business or corporate headquarters in Heathrow, Florida, and is corporate successor to or has done business as **Wallace Pencil Company**.

9

SLC-7239695-3

34.     Upon information and belief, **Don V. Davis Company** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

35.     Upon information and belief, **Dow Screw Products, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to **DSP, Inc.**

36.     Upon information and belief, **DRS Sustainment Systems, Inc.** is a Delaware corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **Engineered Air Systems, Inc.**

37.     Upon information and belief, **Durable Metals Enterprises, LLC** is a Delaware corporation, with its principal place of business or corporate headquarters in Bloomfield Hills, Michigan, and is corporate successor to or had done business as **Harvard Interiors Mfg Co.**

38.     Upon information and belief, **Eaton Corporation** is an Ohio corporation, with its principal place of business or corporate headquarters in Cleveland, Ohio, and is corporate successor to or has done business as **Cooper Industries, Inc.** and **McGraw-Edison Company**.

39.     Upon information and belief, **Elantas PDG, Inc.** is a Delaware corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **The P. D. George Company**, **P.D. George**, and/or **Superior Protective Coatings**.

40.     Upon information and belief, **Engineered Products Industries, L.L.C.** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **St. Clair Die Casting**, **St. Clair Die Casting Co.**, **St. Clair Die Casting, L.L.C.**,  and/or **SCDC Co.**

10

41.      Upon information and belief, **Enterprise Leasing Company of STL, LLC** is a Delaware corporation, with its registered office in Wilmington, Delaware, and related entity **Enterprise Holdings, Inc.,** a Missouri Corporation with its principal place of business or corporate headquarters in St. Louis, Missouri, are corporate successors to or have done business as **Enterprise Leasing Co.**

42.      Upon information and belief, **Estron Chemical, Inc.** is a Kentucky corporation, with its principal place of business or corporate headquarters in Calvert City, Kentucky, and is corporate successor to or has done business as **Estron Chemical**.

43.      Upon information and belief, **Fairmont Minerals, Ltd.** is a Delaware corporation, with its principal pace of business or corporate headquarters in Chesterland, Ohio, and is corporate successor to or has done business as **Alpha Resins**.

44.      Upon information and belief, **Farm to Fork, Inc. and related entities Riley Paint Co., Inc. and Riley Industrial Painting, Inc.** are Iowa corporations, with their principal place of business or corporate headquarters in Burlington, Iowa, and are corporate successors to or have done business as **Riley Brothers Construction Co.**, **Riley Brothers, Inc.**, **Riley Paint Co.**, **Riley Industrial Painting**, **Riley Bros.**, and/or **Riley Inc.**.

45.      Upon information and belief, **Federal-Mogul Products, Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in Southfield, Michigan, and is corporate successor to or has done business as **MOOG Automotive, Inc.** and/or **MOOG Automotive**.

46.      Upon information and belief, **Florissant Motor Co., Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in Florissant, Missouri, and is corporate successor to or has done business as **Florissant Motor Company**.

11

47.     Upon information and belief, **Flint Group North America Corporation** is a Michigan corporation, with its principal place of business or corporate headquarters in Plymouth, Michigan, and is corporate successor to or has done business as **Manders Premier**, **Croda Inks Corp.**, **Richardson Ink Co.**, and/or **Richardson Co.**

48.     Upon information and belief, **GlaxoSmithKline Consumer Healthcare, L.P.** is a Delaware corporation, with its principal place of business or corporate headquarters in Philadelphia, Pennsylvania, and is corporate successor to or has done business as **Smithline Beecham Consumer Healthcare, L. P.** and "**GlathoSmithKline Consumer Healthc**."

49.     Upon information and belief, **Gould Electronics Inc.** is an Arizona corporation, with its principal place of business or corporate office in Phoenix, Arizona, and is corporate successor to or has done business as **GA-TEK, Inc.**,  **Gould Inc.**, **Century Electric Company**, **Century Electric Inc.**, and / or  **Century Electric**.  Upon information and belief, **Gould Electronics Inc.** is a wholly owned subsidiary of **JX Nippon Mining & Metals Co.**

50.     Upon information and belief, **Great Dane Limited Partnership** is a Delaware corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **Great Dane Trailers** and **Dane Acquisition Corp.**

51.     Upon information and belief, **GW Composites, Inc.** is a Missouri Corporation, with its principal place of business or corporate headquarters in St. Charles, Missouri, and is corporate successor to or did business as **GW Fiberglass, Inc.** and **General Woodcraft, Inc.**

52.     Upon information and belief, **Gycor International, Ltd.** is an Illinois corporation with its principal place of business or corporate headquarters in Woodridge, Illinois.

SLC-7239695-3

53. Upon information and belief, **H.O.M.E. Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in Hermann, Missouri, and is corporate successor to or has done business as **Interstate House of metal Enclosures, Inc.** and **Home Inc.**

54. Upon information and belief, **Hayes-Albion Corporation** is a Michigan corporation, with its principal place of business or corporate headquarters in Jackson, Michigan, and is corporate successor to or has done business as **St. Louis Die Casting, Inc.** and **St. Louis Die Casting Group**.

55. Upon information and belief, **Henninges Automotive of Keokuk, LLC** is a Delaware corporation, with its principal place of business or corporate headquarters in Auburn Hills, Michigan, and is corporate successor to or has done business as **Metzeler Automotive Profile Systems Keokuk, LLC**, **Henniges Automotive Iowa, Inc.**, **Schlegel Keokuk**, and/or **Sheller-Globe**.

56. Upon information and belief, **Henry Technologies, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Beloit, Wisconsin, and is corporate successor to or has done business as **AC&R Components, Inc.** and **A C & R Components**.

57. Upon information and belief, **Hitchiner Manufacturing Co., Inc.** is a New Hampshire corporation with its principal place of business or corporate headquarters in Milford, New Hampshire.

58. Upon information and belief, **Hodell-Natco Industries, Inc.** is an Ohio corporation, with its principal place of business or corporate headquarters in Valley View, Ohio, and is corporate successor to or has done business as **Natco Fasteners, Inc.** and **Missouri Alloy Stud Inc.**

13

59.     Upon information and belief, **Homestar Industries of Missouri, Inc.**, is a Missouri corporation, with its principal place of business or corporate headquarters in Fenton, Missouri, and is corporate successor to or did business as **Vinylgrain of St. Louis, Inc.** and **Homestar Industries Inc.**

60.     Upon information and belief, **Homewood Disposal Services, Inc.** is an Illinois Corporation with its corporate headquarters in Homewood, Illinois, and does business under the assumed name **Tinley Park Disposal**.

61.     Upon information and belief, **Howard Medical Company** is a Delaware corporation with its principal place of business or corporate headquarters in Chicago, Illinois.

62.     Upon information and belief, **Huggins Metal Finishing, Inc.**, is a Missouri Corporation, with its principal place of business or corporate headquarters in Sullivan, Missouri, and has done business as **Sullivan Precision Metal Finishing**.

63.     Upon information and belief, **Hydromat Inc.** is a Missouri corporation with its principal place of business in St. Louis, Missouri.

64.     Upon information and belief, **Illinois Central Railroad Company** is an Illinois corporation, with its principal place of business or corporate headquarters in Montreal, Quebec, **and related entity Illinois Central Corporation**, a Delaware corporation, with its principal place of business or corporate headquarters in Chicago, Illinois, are corporate successors to or have done business as **Illinois Central Gulf RR**, **Illinois Central**, and/or **IC**, and are wholly-owned subsidiary of **Canadian National Railway Company**.

65.     Upon information and belief, **Interstate Chemical Company, Inc.** is a Pennsylvania corporation with its corporate headquarters in in Hermitage, Pennsylvania, and is

14

SLC-7239695-3

corporate successor to or has done business as **Coleman Chemical Corporation**, **Coleman Chemical & Oil**, and **SEA Corporation**.

66.     Upon information and belief, **JX Nippon Mining & Metals USA, Inc.** is an Arizona corporation, with its principal place of business or corporate headquarters in Chandler, Arizona, and is corporate successor to or has done business as **Gould, Inc.**, **Century Electric**, **Century Electric Company**, or **Century Electric Inc.**

67.     Upon information and belief, **Kimberly-Clark Corporation** is a Delaware corporation with its principal place of business or corporate headquarters in Irving, Texas, and is corporate successor to or has done business as **Flex-O-Lite, Inc.** and **Flex-O-Lite, Ltd.**, former divisions of **Jackson Products, Inc.**, and as **Flex-O-Lite**.

68.     Upon information and belief, **Koch Pipeline Company, L.P.**, a Delaware corporation with its principal place of business or corporate headquarters in Corpus Christi, Texas, and related entity **Siegel-Robert, Inc.**, a Nevada corporation with its principal place of business or corporate headquarters in Auburn Hills, Michigan, are corporate successors to or have done business as **Koch Industries** and **Siegel-Robert**, respectively.

69.     Upon information and belief, **Kronos (US), Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in Dallas, Texas, and related entities**, NL Chemicals, Inc.**, **NL Industries, Inc.**, **and NL Spencer Kellogg, Inc.**, are corporate successors to or have done business as "**NL chemicals**."

70.     Upon information and belief, **Kubis Auto Body, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Westmont, Illinois, and is corporate successor to or has done business as **Kubis Autobody Shop Inc**.

15

71.     Upon information and belief, **Kysor Industrial Corporation** is a Michigan corporation, with its principal place of business or corporate headquarters in New Port Richey, Florida, and is corporate successor to or has done business as **Kysor/Westran.**

72.     Upon information and belief, **Lamont Limited** is an Iowa corporation with its principal place of business or corporate headquarters in Burlington, Iowa.

73.     Upon information and belief, **Libra Industries, Inc.** is an Illinois corporation with its principal place of business or corporate headquarters located in Elk Grove Village, Illinois.

74.     Upon information and belief, **MagneTek Inc.** is a Delaware corporation, with its principal place of business or corporate headquarters in Menomonee Falls, Wisconsin, and is corporate successor to or has done business as **MagneTek Century Electric, Century Electric Company**, **Century Electric Inc.**, and / or **Century Electric**.

75.     Upon information and belief, **Mead O'Brien, Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in Kansas City, Missouri, and is the corporate successor to or did business as **O'Brien Process Controls, Inc.** and **O'Brien Equipment Company**.

76.     Upon information and belief, **Mead Technologies, Inc.** is a Missouri Corporation with its principal place of business or corporate headquarters in Rolla, Missouri.

77.     Upon information and belief, **Metropolitan St. Louis Sewer District** is a Missouri Corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and has done business as "**Bissel Point Trmt Plt**."

16

78.    Upon information and belief, **Mid-America Resources, Inc.** is a Missouri corporation**,** with its principal place of business or corporate headquarters in Kansas City, Missouri, and is corporate successor to or has done business as **Mid America Resources**.

79.    Upon information and belief, **Midwest Petroleum Company** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

80.    Upon information and belief, **Missouri Department of Corrections** is a Missouri State agency, with its agency headquarters in Jefferson, Missouri, and has done business as **Missouri State Penitentiary**.

81.    Upon information and belief, **Mitek Corporation** is an Illinois corporation, with its principal place of business or corporate headquarters in Winslow, Illinois, and is successor to or has done business as **Mitek Industries, Soundelier,** and **Atlas Soundelier**.

82.    Upon information and belief, **Multiplex Display Fixture Company** is a Missouri corporation, with its principal place of business or corporate headquarters in Dupo, Illinois, and is corporate successor to, has done business as, or is corporately related to, **The Miller Group**.

83.    Upon information and belief, **Nestlé Purina PetCare Company** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and has done business as **Ralston Purina Company**.

84.    Upon information and belief, **Nick's SOS Garage, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Belleville, Illinois.

85.    Upon information and belief, **Niedt Enterprises, Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **Steelcote Manufacturing Company, SMC Acquisition Corp., Inc.**, and/or **Steelcote Contracting, Inc.**

17

86.     Upon information and belief, **Nooter Corporation** is a Missouri corporation, with its principal place of business or corporate headquarters in Fenton, Missouri, and is corporate successor to or has done business as **Nooter Acquisition Company** and **Nooter Corp.**

87.     Upon information and belief, **Nordenia USA Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Jackson, Missouri, and is the corporate successor to or did business as **M & W Packaging U.S. Inc.**

88.     Upon information and belief, **Omega Coating Corporation** is an Illinois corporation, with its principal place of business or corporate headquarters in Melrose Park, Illinois, and is the corporate successor to or did business as **Delta Coatings Corporation** and **Midwest Lacquer Co., Inc**.

89.     Upon information and belief, **Packaging Concepts, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

90.     Upon information and belief, **Pactiv LLC and related entity Pactiv Corporation** are both Delaware corporations, with their principal place of business or corporation headquarters in Lake Forest, Illinois, and are corporate successors to or did business as **Packaging Corporation of America**.

91.     Upon information and belief, **Paint & Coatings Ventures, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Cicero, Illinois, and is corporate successor to or has done business as **Multicolor Specialties, Inc.** and **Multicolor Specialties Maunfac**.

92.     Upon information and belief, **Park-Mark, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

SLC-7239695-3

93.      Upon information and belief, **Parsons Company, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Roanoke, Illinois, and is corporate successor to or had done business as **Parsons Co. Inc.** and/or **Parsons Manufacturing Inc.**

94.      Upon information and belief, **Pechiney Plastic Packaging, Inc.** is a Delaware corporation, with its principal place of business or corporate headquarters in South Jordan, Utah, and is corporate successor to or did business as **Pechiney Plastic Packaging IC**.

95.      Upon information and belief, **PetroChem Inspection Services, Inc.** is a Delaware corporation, with its principal place of business or corporate headquarters in Houston, Texas, and is corporate successor to or has done business as **TÜV SÜD America Inc.**

96.      Upon information and belief, **Plastic Materials, Inc.** is a California corporation with its principal place of business or corporate headquarters in Ontario, Canada.

97.      Upon information and belief, **Preferred Auto Body, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Chicago, Illinois, and is corporate successor to or had done business as **Preferred Auto Body**.

98.      Upon information and belief, **Principia College Communications** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **Principia College**.

99.      Upon information and belief, **Professional Equities, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in Chesterfield, Missouri.

19

100.    Upon information and belief, **Protestant Memorial Medical Center, Inc.** is an Illinois corporation with its principal place of business or corporate headquarters in Belleville, Illinois, and is corporate successor to or has done business as **Memorial Hospital**.

101.    Upon information and belief, **Ranken Technical College** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **Ranken Technical Institute** and **The David Ranken, Jr., Technical Institute**.

102.    Upon information and belief, **Robertson-Ceco II Corporation** is a Delaware corporation, with its principal place of business or corporate headquarters in Houston, Texas, and is corporate successor to or had done business as **Cupples Products, Inc.** and **Cupples Prod**.

103.    Upon information and belief, **Roesch, Inc.** is a Delaware corporation with its principal place of business or corporate headquarters in Belleville, Illinois.

104.    Upon information and belief, **Rogers Enterprises, Inc.** is a Missouri Corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

105.    Upon information and belief, **Rogun Services, Inc.** is an Illinois Corporation with its principal place of business or corporate headquarters in Peoria, Illinois.

106.    Upon information and belief, **R P & G of Quincy, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Quincy, Illinois, and is the corporate successor to or did business as **RP&G, Inc.**

107.    Upon information and belief, **Sandstrom Products Company** is an Illinois corporation, with its principal place of business or corporate headquarters in Port Byran, IL, and is corporate successor to or has done business as **Sandstrom Prod Co.**

20

108.   Upon information and belief, **Schawk, Inc.** is a Delaware corporation, with its principal place of business or corporate headquarters in Des Plaines, Illinois and is corporate successor to or did business as **Process Color Plate Co.**

109.   Upon information and belief, **Schlegel Corporation** is a New York corporation, with its principal place of business or corporate headquarters in New York, New York, and is corporate successor to or has done business as **Schlegel, a division of BTR; Schlegel Keokuk; Schlegel Sealing Systems,** and/or **Henninges Automotive**.

110.   Upon information and belief, **Sensor Systems, Inc.** is a California corporation, with its principal place of business or corporate headquarters in Chatsworth, California, and is the corporate successor to or has done business as **Sensor Systems**.

111.   Upon information and belief, **Sigma-Aldrich Co. LLC** is a Delaware corporation, with its principal place of business in St. Louis, Missouri, and is corporate successor to or has done business as **Sigma-Aldrich Co.**, **Sigma Chemical Company**, **Sigma**, **Aldrich Chemical**, and/or **Aldrich Chemical Co**.

112.   Upon information and belief, **Sikeston Board of Municipal Utilities** is a Missouri municipal corporation, with its principal place of business or corporate headquarters in Sikeston, Missouri, and is corporate successor to or has done business as **Sikeston Power Station**.

113.   Upon information and belief, **St. Louis Cold Drawn, Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **St. Louis Cold Drawn**.

114.   Upon information and belief, **St. Louis Lithographing Company** is a Delaware corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

21

115.     Upon information and belief, **Standard Machine & Manufacturing Co.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

116.     Upon information and belief, **Standard Sheet Metal Works, Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Peoria, Illinois, and is corporate successor to or has done business as **Standard Sheet Metal Inc.**

117.     Upon information and belief, **Stark Manufacturing LLC** is a New York corporation, with its principal place of business or corporate headquarters in Paris, Arkansas, and is corporate successor to or has done business as **Stark Manufacturing Company**, **Stark Manufacturing, Inc.**, and **Dover Energy, Inc.**

118.     Upon information and belief, **Steelcote Manufacturing Company** is a Missouri corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **SMC Acquisition Corp., Inc.**, and/or **Steelcote Contracting, Inc.**

119.     Upon information and belief, **Sterling Lacquer Manufacturing Company** is a Missouri corporation, with its principal place of busines or corporate headquarters in St. Louis, Missouri, is corporate successor to or has done business as **Sterling Lacquer Co.** and/or **Sterling Lacquer**.

120.     Upon information and belief, **Sunnen Products Company** is a Delaware corporation, with its principal place of business or corporate headquarters in St. Louis, Missouri, and is corporate successor to or has done business as **Sunen Products Company of Delaware**.

121.     Upon information and belief, **Tecumseh Products Company,** a Michigan Corporation with its principal place of business or corporate headquarters in Ann Arbor,

22

SLC-7239695-3

Michigan, and **Specialty Motors Operations, Inc.**, a Delaware corporation, with its principal place of business or corporate headquarters in Eaton Rapids, Michigan,are corporate successors to or have done business as **Von Weise Gear Company**.

122. Upon information and belief, **TG Missouri Corporation** is a Missouri Corporation, with its principal place of business or corporate headquarters in Perryville, Missouri, and is corporate successor to or has done business as **TGUSA Corp**.

123. Upon information and belief, **TIN Inc.** is a Delaware corporation, with its principal place of business or coroprate headquarters in Memphis, Tennessee, and is the successor corporation to or has done business as **Gaylord Container Corporation**, **Gaylord Container**, and **Temple Inland**.

124. Upon information and belief, **True Manufacturing Co., Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in O'Fallon, Missouri.

125. Upon information and belief, **U.S. Tool Grinding, Inc.** is a Missouri corporation, with its principal place of business or corporate headquarters in Desloge, Missouri, and is corporate successor to or has done business as **U.S. Tool Grinding**.

126. Upon information and belief, **UM Holdings, Ltd.** is a New Jersey corporation, with its principal place of business or corporate headquarters in Haddonfield, New Jersey, and is corporate successor to or has done business as **PetroChem International, Inc.** and **PetroChem Inspection Services, Inc.**

127. Upon information and belief, **United Industries Corporation (d/b/a Chemsico, Inc.)** is a Delaware corporation, with its principal place of business or corporate headquarters in Earth City, Missouri, and has done business as **Chemsico** (incorrectly named as Chemisco in the

23

Potentially Responsible Party Investigation Report for the Clayton Chemical Co./Resource Recovery Group Site).

128.    Upon information and belief, **Viad Corp** is a Delaware corporation, with its corporate headquarters in Phoenix, Arizona, and is corporate successor to or has done business as **Dial Corporation** and/or **The Dial Corporation**.

129.    Upon information and belief, **Von Weise USA, Inc., and related entities Von Weise, Inc., Von Weise Gear Company,** are each Delaware corporations with a principal place of business or corporate headquarts in Eaton Rapids or Tecumsa, Michigan and are corporate successors to or have done business as **Von Weise Gear Company.**

130.    Upon information and belief, **Walter Wurdack, Inc.** is a Missouri corporation with its principal place of business or corporate headquarters in St. Louis, Missouri.

131.    Upon information and belief, **Watco Companies, LLC**, is a Delaware corporation, with its principal place of business or corporate headquarters in Pittsburg, Kansas, and is corporate successor to or has done business as **Millenium Rail Inc. Wood River**.

132.    Upon information and belief, **Web Print Controls, Co. Inc.** is an Illinois corporation, with its principal place of business or corporate headquarters in Lake Barrington, Illinois, and is corporate successor to or has done business as **Web Printing Controls**.

133.    Upon information and belief, **ZF North America** is a Delaware corporation, with its principal place of business or corporate headquarters in Northville, Michigan, and is the corporate successor to or has done business as **Boge North America**.

24

SLC-7239695-3

**USEPA-DESIGNATED SUPERFUND SITES**

134.    The USEPA designated "Sauget Area 2" as a Superfund Site, which is located on the eastern side of the Mississippi River within the boundaries of the City of East St. Louis and the Villages of Cahokia and Sauget, Illinois.

135.    The entirety of Sauget Area 2 exists within the Mississippi American Bottoms Floodplain, which topographically constitutes primarily flat bottomland with a surface that generally slopes from north to south and from east to west toward the Mississippi River.

136.    Within Sauget Area 2, USEPA designated five separate areas (Sites O, P, Q, R and S).

137.    USEPA also designated another Superfund Site east of Sauget Area 2, which it named "Sauget Area 1."  USEPA further sub-divided Sauget Area 1 into several areas representing stream segments and former disposal sites (Segments A – F of Dead Creek and Sites G, H, I, L, M and N).

138.    The area surrounding Sauget Area 1 contains various industrial facilities, including the W.G. Krummrich plant to the north of Sauget Area 1 and the Clayton Chemical facility west of Sauget Area 1.

139.    During low river stage conditions, groundwater within Sauget Area 1 and Sauget Area 2 flows generally from east to west and releases to the Mississippi River.  When flood stage occurs in the Mississippi River, groundwater flow reverses, moving from west to east.

140.    Site R in Sauget Area 2 consists of a former landfill in Sauget, Illinois, between the flood control levee and the Mississippi River.

141.    Extensive sampling at Site R has detected volatile and semi-volatile organic compounds, polychlorinated biphenyls, metals, and pesticides.

25

142.    Site S in Sauget Area 2 consists of several acres of land located immediately south of the CCC Site, about 100 feet west-southwest of Site O, to the east of Site R.

143.    Extensive sampling at Site S has detected volatile and semi-volatile organic compounds ("VOCs" and "SVOCs"), polychlorinated byphenyls ("PCBs"), metals, and pesticides.

144.    Site Q in Sauget Area 2 is known as the Sauget & Company Landfill.  The northern portion (approximately 400 feet wide) is situated between the CCC Site and Trade Waste on the east and Site R on the west.  The southern section is located south of Site R along the Mississippi River.

145.    Extensive sampling at Site Q has detected VOCs and SVOCs, PCBs, metals, and pesticides.

## CLAYTON CHEMICAL COMPANY SITE

146.    The CCC Site encompasses approximately 7 acres in Sauget, Illinois, located due east of Site R between Pitzman Ave. and American Bottom Rd.

147.    From approximately 1929 to 1961, GM&O Railroad, n/k/a the Illinois Central Railroad Company ("the Railroad") owned and operated the CCC Site.  In 1929, the Railroad constructed a sixteen-stall roundhouse on a portion of the CCC Site to conduct railroad equipment repairs and maintenance.  Types of waste that may have been generated and disposed on the CCC Site during this time frame are those typical of a rail yard in those years.

148.    In 1961, Clayton Chemical Company ("Clayton") leased the CCC Site from the Railroad in order to recycle and recover used solvents and waste oil.  By 1981, Clayton had purchased the CCC Site from the Railroad.  Clayton continued operating a waste oil and solvent recycling business on the CCC Site from 1961 until November 1996.

26

149. As part of its operations, Clayton accepted waste oil, solvents, and other toxic chemicals and substances from dozens of entities seeking to dispose of such wastes.

150. Between November 1996 and 1998, the CCC Site was operated as a waste oil and spent solvent recycling and recovery business by a new entity, the Resource Recovery Group ("RRG").

151. In 1998, Illinois EPA denied a RCRA permit for RRG's operations.  Soon thereafter, RRG ceased accepting hazardous substances at the CCC Site.  In 2001, Illinois EPA referred the CCC Site to USEPA.

## SITE Q

152. Site Q is located in the Villages of Sauget and Cahokia, Illinois, and is bordered by Site R and the old Union Electric Power Plant on the north, the Illinois Central Gulf Railroad and the United States Corps of Engineers ("U.S. COE") flood control levee on the east, and the Mississippi River on the west. Site Q is bisected by a rail spur, and covers approximately 225 acres of land.

153. Upon information and belief, Paul Sauget and Sauget & Company operated a landfill at Site Q from approximately 1957 to 1975 and accepted wastes from Sauget area industries and numerous other sources.

154. Upon information and belief, open dumping continued at Site Q until the early 1990s.

155. Upon information and belief, the wastes disposed at Site Q included drums of chemical and industrial wastes, solid and liquid chemical and industrial wastes, septic tank pumpings, salvage material, construction debris, and fly ash.

27

SLC-7239695-3

156.    Upon information and belief, USEPA conducted a removal action at Site Q in 1995 that involved the excavation of drums and soils contaminated with PCBs, organics and metals.

157.    Upon information and belief, USEPA conducted a removal action at Site Q in 1999-2000, and excavated more than 3,000 drums and more than 15,000 tons of contaminated soil.

158.    Upon information and belief, soil samples collected at Site Q have revealed elevated levels of certain "hazardous substances," as that term is defined in Section 101(14) of CERCLA (42 U.S.C. §9601(14)), including, but not limited to, VOCs, PCBs, and heavy metals.

159.    Upon information and belief, Site Q was used by Clayton Chemical to dispose of wastes from the CCC Site facility.

## SITE S

160.    Site S occupies several acres of land located to the west-southwest of Site O.

161.    Upon information and belief, Site S was owned by the Village of Sauget and was operated by Paul Sauget and Sauget & Company as a waste disposal site from 1973 to the late 1970s.

162.    Upon information and belief, Paul Sauget and Sauget & Company constructed a pit on Site S that was used to dispose of stillbottoms that resulted from steam-stripping during solvent recovery at the CCC Site until the late 1970s.

163.    Upon information and belief, wastes transported from the CCC Site facility and disposed of on Site S originated from the CCC Site facility and Third-Party Defendants.

28

164.    Upon information and belief, soil samples collected at Site S have revealed elevated levels of certain "hazardous substances," as that term is defined in Section 101(14) of CERCLA (42 U.S.C. §9601(14)), including VOCs, SVOCs, PCBs and heavy metals.

165.    Upon information and belief, groundwater samples collected in the area of Site S have revealed elevated levels of certain hazardous substances including VOCs, SVOCs and metals.

## GROUNDWATER CONTAMINATION

166.    Upon information and belief, during the years 1961 through 1998, Third-Party Defendants arranged for or caused to be delivered, wastes qualified as "hazardous substances," as that term is defined in §§ 101(14) and 107(a) of CERCLA (42 U.S.C. §§ 9601(14) and 9607(a)), to the CCC Site.

167.    Upon information and belief, these hazardous substances contaminated the soil and groundwater beneath the CCC Site, Site S, and a portion of Site Q.

168.    Based on groundwater testing and expert opinion testimony, it is believed that elevated levels of hazardous substances recovered by the Sauget Groundwater OU interim remedy, originated from the CCC Site facility, Site S, and portions of Site Q.

169.    Upon information and belief, groundwater beneath the CCC property, Site S, and portions of Site Q has flowed offsite and continues to flow downgradient towards the Missouri River, contributing to the contamination of groundwater beneath Sauget Area 2 and at the Sauget Groundwater OU interim remedy.

170.    The Sauget Groundwater OU interim remedy and the sources of contamination, including the CCC Site, are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

SLC-7239695-3

171.    There have been "releases," and "threatened releases" of hazardous substances at or from the CCC Site, Site S, and Site Q, as those terms are defined in §§ 101(29) and 101(22) of CERCLA (42 U.S.C. §§ 9601(29) and (22)).

## CLAYTON CHEMICAL CONTAMINATION OF AREA 2 SITES

172.    Upon information and belief, Third-Party Defendants arranged for or caused to be delivered, wastes containing "hazardous substances," as that term is defined in §§ 101(14) and 107(a) of CERCLA (42 U.S.C. §§ 9601(14) and 9607(a)), to the CCC Site, which were later transferred to the Area 2 sites.

173.    Upon information and belief, these hazardous substances contaminated the soil and groundwater beneath the Area 2 sites, including Site S and Site Q.

174.    There have been "releases," and "threatened releases" of hazardous substances at the Area 2 sites, including Site S and Site Q, as those terms are defined in §§ 101(29) and 101(22) of CERCLA (42 U.S.C. §§ 9601(29) and (22)).

175.    Upon information and belief, Clayton transported wastes from the CCC Site to the Area 2 sites, including Site Q and Site S.

176.    Upon information and belief, still bottoms containing hazardous substances were transported from the CCC Site and disposed of at Site Q and Site S that contained hazardous substances originating with Third-Party Defendants.

177.    Upon information and belief, hazardous substances deposited at Site Q and Site S are contributing to the contamination of the soil and groundwater beneath Sauget Area 2.

178.    Third-Party Plaintiffs have incurred costs performing a Remedial Investigation and Feasibility Study on the Sauget Area 2 sites, including Site Q and Site S, and EPA has issued

a Record of Decision selecting a remedy for Site Q and Site S.  Third-Party Plaintiffs may incur costs in the future performing the EPA-selected remedy for Site Q and Site S.

179.    Site Q and Site S are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

**INTERIM GROUNDWATER REMEDY**

180.    Upon information and belief, the deposition of hazardous substances within Area 2 that originated with the CCC Site facility has also resulted in the migration of contaminated groundwater toward the Mississippi River.

181.    On or about April 1, 2002, Third-Party Plaintiffs submitted a Focused Feasibility Study ("FFS") to USEPA, which proposed an interim groundwater remedy consisting of a slurry wall to be built at Site R parallel to the Mississippi River.

182.    On or about September 30, 2002, USEPA executed a Record of Decision ("ROD") for an Interim Groundwater Remedy for the Sauget Groundwater OU interim remedy at Sauget Area 2 Site R.  USEPA found that groundwater contamination downgradient from various industrial facilities, including the facility on the CCC Site, was releasing into the Mississippi River.  Based upon available data and a Baseline Ecological Risk Assessment, USEPA concluded that action needed to be taken to prevent groundwater contamination from releasing into the Mississippi River.  This action was found by USEPA to be necessary to protect public health or welfare or the environment from actual or threatened releases of hazardous substances into the environment.

183.    As proposed in the ROD, the Interim Groundwater Remedy includes the installation of a groundwater extraction system at Site R, which is designed to prevent the release of impacted groundwater to the Mississippi River downgradient of the following source areas:

SLC-7239695-3

Area 2 Sites O, Q, R and S; Sauget Area 1 Site I; the W.G. Krummrich Plant; the Clayton Chemical facility, and various other industrial facilities in Sauget.

184. The selected remedy constitutes an interim remedial action for the groundwater operable unit at the Sauget Area 2 Site. USEPA has not yet issued a ROD for the final remedial action to address groundwater contamination.

185. The selected remedy included the installation of a 3,500 foot long U-shaped, fully penetrating, jet-grouted barrier wall installed between the down gradient boundary of Sauget Area 2 Site R and the Mississippi River, institutional controls, groundwater recovery wells, the discharge and treatment of extracted groundwater, groundwater quality monitoring, groundwater level monitoring, and surface water monitoring.

186. Also on or about September 30, 2002, USEPA issued an Unilateral Administrative Order for Remedial Design and Interim Remedial Action ("UAO") to Pharmacia, Solutia, and 74 other potentially responsible parties pursuant to the authority vested in the President of the United States to enter into such orders by §§104, 106(a), and 122 of CERCLA (42 U.S.C. §§ 9604, 9606(a), and 9622), as delegated to the Administrator of USEPA by Executive Order No. 12580, January 23, 1987, 52 Fed. Reg. 2926, and further delegated to the Regional Administrators on September 13, 1987, by USEPA Delegation Nos. 14-14 and 14-14A, and to the Director, Superfund Division, Region 5, by Delegation No. 14-14B on September 30, 2002. Both Pharmacia and Solutia are parties to the UAO.

187. The UAO directed recipients to implement the interim remedial measures selected by the USEPA in the September 30, 2002 ROD referred to above. Of the 76 potentially responsible parties issued the UAO, only Third-Party Plaintiffs contributed to implementing the

SLC-7239695-3

Sauget Groundwater OU interim remedy.  Failure to comply with the UAO subjects each named Respondent to civil penalties in the amount of $27,500 per day and possible punitive damages.

188.    Third-Party Plaintiffs constructed the Sauget Groundwater OU interim remedy at a cost of approximately $28 million.  The ongoing costs associated with maintaining the Sauget Groundwater OU interim remedy has been approximately $2 million annually and it is expected such costs will continue indefinitely.

189.    Releases and threatened releases at the Sauget Groundwater OU interim remedy have caused and will continue to cause the Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. §§ 9601(25), 9607(a)).

190.    USEPA has incurred costs in overseeing work conducted by Third-Party Plaintiffs pursuant to the UAO.  While Third-Party Plaintiffs have reimbursed USEPA for a portion of these oversight costs, USEPA alleges it remains unreimbursed for response costs as more fully described in the United States' Amended Complaint.

191.    In 2013, the United States filed its Amended Complaint against the Third-Party Plaintiffs seeking reimbursement for response costs, enforcement costs, prejudgment interest, and costs of bringing its action.  The United Sates also seeks a declaratory judgment binding on any subsequent actions to recover further response costs in connection with the Sauget Groundwater OU interim remedy.

192.    Third-Party Defendants have benefited from implementation of the Sauget Groundwater OU interim remedy in that the Sauget Groundwater OU interim remedy fully contains groundwater contamination originating from the CCC Site facility, Site S, and portions of Site Q from flowing down-gradient into the Mississippi River.

SLC-7239695-3

193.    Third-Party Plaintiffs' implementation of the Sauget Groundwater OU interim remedy has saved millions of dollars in groundwater remediation costs at the CCC Site that would otherwise be necessary to prevent offsite movement to the Mississippi River of contaminated groundwater originating at the CCC Site facility for which Third-Party Defendants would have liability for the costs of such remediation.

## COUNT I

### (Cost Recovery – Response Costs Incurred Pursuant to the UAO)

194.    Third-Party Plaintiffs reallege and incorporate paragraphs 1 through 193 as if fully set forth herein.

195.    Sites O, P, Q, R and S in Sauget Area 2 are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

196.    The CCC Site and the Sauget Groundwater OU interim remedy are "facilities" within the meaning of § 101(9) of CERCLA (42 U.S.C. § 9601(9)).

197.    Third-Party Defendants are "person(s)" within the meaning of § 101(21) of CERCLA (42 U.S.C. § 9601(21)).

198.    At all times relevant to this action, each Third-Party Defendant named herein arranged for disposal or treatment, arranged with a transporter for transport for disposal or treatment, or accepted for transport to the CCC Site facility, "hazardous substances" from which there were "releases" and "threatened releases" of "hazardous substances" into the environment at the CCC Site and Sauget Area 2 within the meaning of CERCLA §§ 101(14), 101(20), 101(22), and 107(a) (42 U.S.C. § § 9601(14), 9601(20), 9601(22) and 9607(a)).

199.    These "releases" and "threatened releases" of hazardous substances at the CCC Site and Sauget Area 2 have caused, and will continue to cause, Third-Party Plaintiffs and the

34

United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. § § 9601(25) and 9607(a)), including but not limited to work performed under the UAO for implementation of the Sauget Groundwater OU interim remedy.

200.    These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the UAO for implementation of the Sauget Groundwater OU interim remedy, the Administrative Order on Consent for Remedial Investigation and Feasibility Study for the Area 2 sites and potential future agreements and orders.

201.    The response actions taken and the response costs incurred by Third-Party Plaintiffs and the United States at the Sauget Groundwater OU interim remedy and at the Sauget Area 2 sites are consistent with, and will continue to be consistent with, the National Contingency Plan, which was promulgated under § 105(a) of CERCLA (42 U.S.C. § 9605(a)), and codified at 40 C.F.R. Part 300. ("NCP"), 40 C.F.R. Part 300.

202.    To date, Third-Party Defendants named herein have failed to provide all reasonable cooperation and assistance requested pursuant to the UAO and further failed to reimburse Third-Party Plaintiffs or USEPA for any of the above-referenced response costs, even though they have benefited from the implementation of the Sauget Groundwater OU interim remedy.[1]

203.    Third-Party Defendants are jointly and severally liable to the Third-Party Plaintiffs for recovery of all costs expended on response actions, including oversight and enforcement costs for which Third-Party Plaintiffs are required to reimburse the United States, in

---

[1] This excepts defendants named in this amended third-party complaint who have already settled their claims with Third-Party Plaintiffs but for which the Court has not yet granted dismissal.

SLC-7239695-3

connection with recovery of hazardous substances released at the CCC Site and recovered by the Sauget Groundwater OU interim remedy.

204. Third-Party Defendants are jointly and severally liable to the Third-Party Plaintiffs for recovery of all costs expended on response actions, including oversight and enforcement costs for which Third-Party Plaintiffs are required to reimburse the United States, in connection with remediation to address hazardous substances, including still bottoms, transported from the CCC Site to the Sauget Area 2 sites including Sites S and Q.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pharmacia and Solutia respectfully requests that this Court:

(a)     Enter a judgment for cost recovery against Third-Party Defendants pursuant to § 107(a) of CERCLA (42 U.S.C. § 9607(a)), for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the UAO within Area 2, including but not limited to implementation of the Sauget Groundwater OU interim remedy at Site R, including interest and any response costs Third-Party Plaintiffs are required to pay USEPA for its oversight or enforcement;

(b)     Enter a judgment for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the Administrative Order on Consent to perform a Remedial Investigation and Feasibility Study related to the Sauget Area 2 sites, including Site S and Site Q, to address hazardous substances, including still bottoms, transported form the CCC Site to the Sauget Area 2 sites.

(c)     Enter a declaratory judgment that each of the Third-Party Defendants are jointly and severally liable for all response costs that will be incurred by Third-Party

36

Plaintiffs in the future related to performing response activities pursuant to the UAO at Sauget Area 2 Sites R, S, and Q, including implementing of the Sauget Groundwater OU interim remedy, and for any and all response cost incurred by Third-Party Plaintiffs under any future order related to performing response activities to address hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q; and

(d)     Order such other and further relief as this Court may deem just and proper.

## COUNT II
### (Contribution)

205.    Third-Party Plaintiffs reallege and incorporate Paragraphs 1 through 204 as if fully set forth herein.

206.    Third-Party Defendants are "person(s)" within the meaning of § 101(21) of CERCLA (42 U.S.C. § 9601(21)).

207.    As previously alleged, each Third-Party Defendant is a liable or potentially liable party under § 107(a) of CERCLA (42 U.S.C. § 9607(a)).

208.    At all times relevant to this action, each Third-Party Defendant named herein has caused "releases" and "threatened releases" of "hazardous substances" into the environment at the CCC Site and Sauget Area 2 within the meaning of §§ 101(14), 101(20), 101(22), and 107(a) of CERCLA (42 U.S.C. §§ 9601(14), 9601(20), 9601(22) and 9607(a)).

209.    These "releases" and "threatened releases" of hazardous substances at the CCC Site and Sauget Area 2 have caused Third-Party Plaintiffs and the United States to incur "response" costs within the meaning of §§ 101(25) and 107(a) of CERCLA (42 U.S.C. §§ 9601(25) and 9607(a)) for work performed under the UAO for implementation of the Sauget Groundwater OU interim remedy.

SLC-7239695-3

210.    The United States filed its civil action against Third-Party Plaintiffs pursuant to § 107 of CERCLA (42 U.S.C. § 9607) seeking recovery of response costs and interest allegedly incurred by the United States in connection with the UAO and implementation of the Sauget Groundwater OU interim remedy.

211.    These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the UAO for implementation of the Sauget Groundwater OU interim remedy and the Administrative Order on Consent for Remedial Investigation and Feasibility Study at the Sauget Area 2 sites.

212.    These response costs incurred by Third-Party Plaintiffs and the United States are consistent with, and will continue to be consistent with, the National Contingency Plan, which was promulgated under § 105(a) of CERCLA (42 U.S.C. § 9605(a)), and codified at 40 C.F.R. Part 300.

213.    Pharmacia and Solutia, pursuant to § 113(f) of CERCLA (42 U.S.C. § 9613(f)) are entitled to contribution from each of the Third-Party Defendants with respect to all response costs incurred or to be incurred by Third-Party Plaintiffs, including interest and oversight reimbursement, in performing response activities pursuant to the UAO for implementation of the Sauget Groundwater OU interim remedy, the Administrative Order on Consent for Remedial Investigation and Feasibility Study, and any future agreement or orders related to the Sauget Area 2 sites;

214.    To date, Third-Party Defendants named herein have failed to reimburse Third-Party Plaintiffs or USEPA for any of the above-referenced response costs.

215.    Third-Party Defendants are liable to the Third-Party Plaintiffs for their equitable share of all costs of response actions, including oversight and enforcement costs for which Third-

SLC-7239695-3

Party Plaintiffs are required to reimburse the United States, in connection with recovery of hazardous substances released at the CCC Site and recovered by the Sauget Groundwater OU interim remedy, and hazardous substances released at other Area 2 sites that originated at the CCC Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pharmacia and Solutia respectfully requests that this Court:

(a)     Enter a judgment of contribution against each of the Third-Party Defendants pursuant to § 113(f) of CERCLA (42 U.S.C. § 9613(f)), for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the UAO within Area 2, including but not limited to implementation of the Sauget Groundwater OU interim remedy at Site R, including interest and any costs Third-Party Plaintiffs are required to pay USEPA for its oversight or enforcement;

(b)     Enter a judgment for any and all response costs incurred by Third-Party Plaintiffs in performing response activities pursuant to the Administrative Order on Consent to perform a Remedial Investigation and Feasibility Study related to the Sauget Area 2 sites, including Site S and Site Q, to address hazardous substances, including still bottoms, transported form the CCC Site to the Sauget Area 2 sites.

(c)     Enter a declaratory judgment that each of the Third-Party Defendants are liable for their equitable share of all response costs that will be incurred by Third-Party Plaintiffs in the future related to performing response activities pursuant to the UAO at Sauget Area 2 Sites R, S, and Q, including implementing of the Sauget Groundwater OU interim remedy, and for any and all response cost incurred by

SLC-7239695-3

Third-Party Plaintiffs under any future order related to performing response activities to address hazardous substances transported from the CCC Site to the Sauget Area 2 sites, including Site S and Site Q; and

(d)    Order such other and further relief as this Court may deem just and proper.

Respectfully submitted,

By: _____/s/ Joseph G. Nassif_____
        Joseph G. Nassif, #6200809
        Jason A. Flower, #6279097
        Jonathan R. Waldron, #6292058
        Husch Blackwell LLP
        190 Carondelet Plaza, Ste. 600
        St. Louis, Missouri 63105
        Joseph.Nassif@huschblackwell.com
        Telephone:  (314)480-1500
        Fax: (314)480-1505

**Attorneys for Pharmacia LLC
and Solutia Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was electronically e-mailed to the Court's public e-mail box on this 23rd day of May, 2014.

_____/s/ Joseph G. Nassif_____

SLC-7239695-3